ROBERT B. NEILSON AND DOROTHY F. NEILSON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4014-88.        Filed January 2, 1990.

Robert B. Neilson and Dorothy F. Neilson, pro se.
*Kathryn K. Vetter,* for the respondent.

GERBER, *Judge:* Respondent determined deficiencies in petitioners' Federal income taxes for taxable years 1983 and 1984 in the amounts of $918.00 and $992.98, respectively. Petitioners moved, at the time of trial, to dismiss for lack of jurisdiction on the ground that any deficiency in or liability for 1983 and 1984 income taxes was or should have been discharged in their bankruptcy proceedings. At trial, the parties offered evidence concerning both the jurisdictional motion and the underlying income tax issue involving claimed deductions for "office in home" under section 280A.[1] The jurisdictional motion was taken under advisement and is addressed as the first issue in this opinion.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners Robert B. and Dorothy F. Neilson are husband and wife and resided in Carmichael, California, at the time the petition in this case was filed. Petitioners filed timely joint 1983 and 1984 Federal income tax returns. In connection with respondent's examination of their 1983 and 1984 returns, petitioners executed a Consent to Extend Time to Assess Tax (Form 872) to extend the period of assessment for the 1983 income tax until December 31, 1987. Petitioners executed the consent in December 1986.

### *Petitioners' Bankruptcy Proceedings*

During mid-June 1987, each petitioner voluntarily initiated a liquidating bankruptcy proceeding under chapter 7 of the Bankruptcy Act, 11 U.S.C. The voluntary petitions were

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

filed on behalf of each taxpayer in the U.S. Bankruptcy Court for the Eastern District of California.

Schedules filed by petitioners in conjunction with their petitions listed, as a "disputed liability," $8,400 in taxes owed to the "I.R.S." There is no indication that the 1983 and 1984 deficiencies determined by respondent in this case were part of the $8,400 listed in the bankruptcy proceeding. Respondent did not file a proof of claim in either bankruptcy proceeding and neither petitioners nor respondent filed an application in the bankruptcy proceeding to determine the dischargeability of petitioners' 1983 and 1984 tax liability.

On October 20, 1987, discharge orders were entered in the Neilsons' respective bankruptcy proceedings which provided in pertinent part as follows:

1. THE ABOVE-NAMED DEBTOR(S) IS RELEASED FROM ALL DISCHARGEABLE DEBTS.

2. ANY JUDGMENT HERETOFORE OR HEREAFTER OBTAINED IN ANY COURT OTHER THAN THIS COURT IS NULL AND VOID AS A DETERMINATION OF THE PERSONAL LIABILITY OF THE DEBTOR(S) WITH RESPECT TO ANY OF THE FOLLOWING:

(A) DEBTS DISCHARGEABLE UNDER 11 U.S.C. SEC. 523;

(B) UNLESS HERETOFORE OR HEREAFTER DETERMINED BY ORDER OF THIS COURT TO BE NONDISCHARGEABLE, DEBTS ALLEGED TO BE EXCEPTED FROM DISCHARGE UNDER CLAUSES (2), (4), and (6) OF 11 U.S.C. SEC. 523(A);

(C) DEBTS DETERMINED BY THIS COURT TO BE DISCHARGED UNDER 11 U.S.C. SEC. 523(D).

3. ALL CREDITORS WHOSE DEBTS ARE DISCHARGED BY THIS ORDER AND ALL CREDITORS WHOSE JUDGMENTS ARE DECLARED NULL AND VOID BY PARAGRAPH 2 ABOVE ARE ENJOINED FROM INSTITUTING OR CONTINUING ANY ACTION OR EMPLOYING ANY PROCESS TO COLLECT SUCH DEBTS AS PERSONAL LIABILITIES OF THE ABOVE-NAMED DEBTOR(S).

Respondent was notified of the discharge in Dorothy Neilson's bankruptcy proceeding on or about October 23, 1987. Notice of the discharge in Mr. Neilson's bankruptcy was not sent to respondent apparently due to an incomplete address.

On December 9, 1987, respondent mailed a joint statutory notice of deficiency to petitioners for their 1983 and 1984 taxable years. The deficiencies resulted from respondent's partial disallowance of certain home office deductions claimed on petitioners' joint Federal income tax returns.

On December 10, 1987, the bankruptcy trustee reported that no assets could be recovered from either of petitioner-bankrupts' estates and on January 28, 1988, an order was approved reflecting no distribution and closing the bankrupts' estates. The petition to this Court was filed on March 1, 1988. There is no indication that respondent filed a proof of claim or that petitioners made an attempt to litigate the merits or dischargeability of the tax deficiencies in the bankruptcy proceeding.

## Respondent's Deficiency Determination

During 1983 and 1984 petitioners operated a licensed day-care center in their home. Petitioners purchased their 3,000-square-foot home in 1981 for $119,624, of which $75,285 was allocable to the house. Eighty-nine percent of the 3,000 square feet of space was utilized for day-care purposes. The following schedules reflect the amount of deductions claimed by petitioners and allowed by respondent for the 1983 and 1984 taxable years:

| Type of deduction | Claimed in 1983 | Allowed in 1983 | Claimed in 1984 | Allowed in 1984 |
| --- | --- | --- | --- | --- |
| Depreciation[2] | $5,057.00 | $1,994.00 | $5,057.00 | $1,994.00 |
| Lawn Care | 532.00 | - - - | 608.00 | - - - |
| Utilities | 753.94 | 792.00 | 1,348.37 | 602.37 |
| Repairs | 960.00 | 442.90 | - - - | - - - |
| Insurance | 425.00 | 190.00 | 697.59 | 311.59 |
| Real estate tax | 1,369.44 | 611.44 | 1,464.29 | 654.29 |
| Interest-Mtg. | 5,455.17 | 3,171.17 | 7,035.85 | 3,921.86 |

[2] Petitioners claimed ACRS depreciation on the straightline method for a 15-year useful life. Respondent determined that only 89 percent of the residence was used for day-care purposes and that day care was provided foronly 75 out of a possible 168 hours per week or 44.6 percent of the total time available for use. With the exception of the lawn care, which was disallowed completely, all other deductions were reduced to reflect the 89-percent and 75-hour factors determined by respondent.

Respondent concedes that any disallowed portion of real estate tax and interest would be deductible as "Schedule A" items. Petitioners conceded that for 1983 the amount of interest claimed exceeded the amount they could verify and that they are therefore not entitled to $119 of the total deduction taken. Petitioners also concede that their personal use of the residence constituted 11 percent and, accordingly, only 89 percent can be considered for business purposes.

Respondent determined that petitioners' use of their residence for day-care services was 75 hours per week. Respondent's estimate was based upon a log kept by petitioners that reflects the times and days that children were in petitioners' care.

In addition to the time children were actually present in petitioners' residence, petitioners spent about 2 hours each morning organizing the facility and preparing luncheon meals for the children. Petitioners also spent about 1 hour each evening after the children departed cleaning and reorganizing the day-care facility. Respondent did not consider the preparation and clean-up time in estimating 75 hours per week. Petitioners, on occasion, also provided day care on weekends. Respondent's formula did not consider the weekend use of petitioners' residence. Petitioners utilized their residence for day-care business purposes for an average of 90 hours per week or 54 percent (90 divided by 168) of the time.

Petitioners claimed and respondent disallowed $532 and $608 for lawn care in 1983 and 1984, respectively. During 1983 and 1984, petitioners used the lawn areas around their residence for day-care business purposes. During 1983 and 1984, petitioners paid $532 and $608, respectively, for lawn care expenses, 54 percent of which is deductible in each taxable year.

OPINION

Petitioners contend that their 1983 and 1984 income tax liabilities were discharged by the discharge orders issued in their respective bankruptcy proceedings and that this Court lacks jurisdiction to redetermine the deficiencies. Respondent counters that these taxes are not dischargeable under the Bankruptcy Code. The parties have incorrectly couched the jurisdictional issue in a manner where jurisdiction would be dependent upon our authority to determine whether the taxes in issue were dischargeable or discharged in the bankruptcies. In so couching the issue, the parties have overlooked the possibility that we may have jurisdiction over the merits of the 1983 and 1984 tax deficiencies without having the jurisdiction to determine the dischargeability question. It is not necessary for us to determine the

dischargeability issue as a prerequisite to redetermining the merits of the income tax issue presented in this case. This is especially true in this case where the deficiencies at issue were not assessed prior to the bankruptcy proceedings, the Government did not file a proof of claim in the case, the merits of the tax liabilities and their dischargeability were not litigated by the parties in the bankruptcy court, and the notice of deficiency and the Tax Court petition were timely mailed and filed after both petitioners were discharged in bankruptcy.

### *Jurisdiction Over Federal Income Tax Controversy*

Properly stated, the first issue we must consider is whether this Court has jurisdiction to redetermine Federal income tax deficiencies with respect to prebankruptcy years when: (1) The deficiencies were not assessed; (2) the deficiencies were not claimed by respondent in a "no-assets" bankruptcy proceeding; (3) the notice of deficiency was mailed after the discharge and before the close of the bankruptcy proceeding; and (4) the petition was filed after the discharge and after the close of the bankruptcy proceeding. This issue is substantially similar to that considered in *Graham v. Commissioner,* 75 T.C. 389, 390 (1980).

In *Graham,* we held that "a notice of deficiency relating to prebankruptcy years is valid if it is mailed after the *termination of the bankruptcy proceeding,* and the Tax Court will have jurisdiction if a timely petition is filed with respect to such notice." (Emphasis supplied.) 75 T.C. at 397. *Graham* involved a voluntary chapter 7 bankruptcy proceeding instituted by the taxpayer after he executed a Form 872 consent and after he received a 30-day letter. Subsequent to the filing of the bankruptcy petition, the court notified respondent that the proceeding was a "no assets" case and that it was not necessary to file a proof of claim at that time. Respondent did not file a proof of claim in the bankruptcy case. Additionally, neither respondent nor the taxpayer filed a complaint to determine the dischargeability of the tax liabilities. The taxpayer was later formally discharged and the estate was closed. Thereafter, the Internal Revenue Service mailed its notice of deficiency to the taxpayer.

The single factual difference between this case and *Graham* is that the notice of deficiency in this case was mailed after the discharge and before the closing of the bankruptcy proceeding, as opposed to being mailed after both of those events. Accordingly, we must consider whether the holding in *Graham* has vitality and, if so, whether the difference in this case would distinguish it from the *Graham* holding. Specifically, we must analyze whether the mailing of the notice of deficiency after the discharge but before the close of the bankruptcy proceeding presents circumstances under which we acquire jurisdiction to consider the merits of respondent's income tax determination for prebankruptcy years.

*Graham* was decided pursuant to former section 6871 and prior to both the enactment of the 1978 Bankruptcy Code and the Bankruptcy Tax Act of 1980, Pub. L. 96-589, 94 Stat. 3389. Under section 6871, a taxpayer's ability to file a petition in this Court terminated once he filed a petition in the bankruptcy court and was concomitantly "adjudicated bankrupt." The bar to filing a petition with this Court was extended until removal by order of a court or until the termination of the bankruptcy. The 1978 Bankruptcy Code and the Bankruptcy Tax Act do not require, in the circumstances of this case, that the bankruptcy proceeding be terminated before a petition may be filed in this Court.

In analyzing *Graham* under the Bankruptcy Code in effect in 1987, we first consider whether respondent was statutorily prohibited from mailing a notice of deficiency to petitioners after the discharge was granted, but before the bankruptcy proceeding had terminated. As a general rule, the filing of a petition in bankruptcy operates to stay the commencement or continuation of any action or proceeding against the debtor. 11 U.S.C. sec. 362(a). However, section 362(b)(9) of the Bankruptcy Code provides an exception to the automatic stay for the issuance to the debtor by a governmental unit of a notice of tax deficiency. Thus, a notice of deficiency may be mailed by respondent at any point in the bankruptcy proceedings.

Despite respondent's ability to issue a notice of deficiency during the bankruptcy case, the Tax Court's jurisdiction is

limited by the stay provisions. Section 362(a)(8) of the Bankruptcy Code provides for an automatic stay prohibiting "the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor." Unless the stay is removed by an order of the bankruptcy court, it continues until the earliest of the case closing, case dismissal, or *the time a discharge is granted.* 11 U.S.C. sec. 362(c)(2); *Thompson v. Commissioner,* 84 T.C. 645, 648 (1985). Accordingly, where a bankruptcy proceeding is closed, dismissed, or a discharge is granted, the automatic stay is "lifted" and is no longer in effect. After the automatic stay has been removed there is no bar to this Court's accepting jurisdiction or continuing a proceeding that had been petitioned prior to the automatic stay. Therefore, to the extent that *Graham* holds that a bankruptcy proceeding must be terminated before a notice of deficiency may be mailed, before a Tax Court petition may be filed, or before we may take jurisdiction of a tax case, it is no longer correct in light of the statutory changes. Under 11 U.S.C. section 362, we may acquire or exercise jurisdiction where the bankruptcy case is terminated or the automatic stay is no longer in effect. This will be the case even where the notice of deficiency was mailed before the stay is lifted.

In this case, the notice of deficiency was mailed after petitioners' discharges were granted and after the automatic stay was lifted. Accordingly, we may acquire and exercise jurisdiction and there was no prohibition to respondent's mailing a notice of deficiency to either petitioner on or before December 9, 1987. See 11 U.S.C. sec. 362(b)(9). We will therefore consider the case on the merits of respondent's income tax deficiency determinations.

## *Jurisdiction Over Dischargeability in Bankruptcy*

We now consider petitioners' primary position that their 1983 and 1984 income tax liabilities were discharged in their bankruptcy proceedings. Petitioners argue that the discharge granted prior to respondent's mailing of a notice of deficiency and the petition to this Court released petitioners from all dischargeable debts, including debts dischargeable under 11 U.S.C. section 523.

As a general rule, the Tax Court's jurisdiction to consider tax matters depends on a notice of deficiency and a timely filed petition. Rule 13; secs. 6212 and 6213. This Court has limited jurisdiction conferred by statute. See sec. 7442; *Burns, Stix Friedman & Co. v. Commissioner*, 57 T.C. 392, 396 (1971); *Magazine v. Commissioner*, 89 T.C. 321, 326 (1987). The determination of an income tax deficiency has "nothing to do with collection of the tax nor any similarity to an action for collection of a debt, nor does it involve any other rights and remedies of the sort traditionally enforced in an action at law." *Swanson v. Commissioner*, 65 T.C. 1180, 1184 (1976).

In exercising our jurisdiction to redetermine deficiencies, we are without jurisdiction to "allow or disallow a claim against a debtor's estate * * * or to discharge taxes as a bankruptcy court might." *Fotochrome, Inc. v. Commissioner*, 57 T.C. 842, 847 (1972). In *Graham*, when confronted with the identical argument, we held that we lacked "the requisite subject matter jurisdiction to decide whether the petitioner's deficiencies * * * were discharged in the bankruptcy proceeding." 75 T.C. at 399. Accordingly, we are without subject matter jurisdiction and petitioners, if they wish a ruling on their dischargeability position, would be required to seek the jurisdiction of the bankruptcy court.

### Income Tax Deficiency—Merits

Generally, under section 280A, no deduction otherwise allowable shall be allowed with respect to the use of a dwelling unit which is used by a taxpayer as a residence during the taxable year. An exception to the general rule exists where the residence is used exclusively and on a regular basis as the principal place of business for any trade or business of the taxpayer. Sec. 280A(c)(1). Additionally, where a taxpayer uses a dwelling unit on a regular basis for day-care services, a deduction may be allowable based upon percentage of use. Section 280A(c)(4)(C) provides for a deduction in an amount equal to the expenses attributable to that portion determined by multiplying the total amount of the expense by a fraction, the numerator of which is the number of hours the portion is used for day-care business

purposes and the denominator of which is the total number of hours that the portion is available for use. Sec. 1.280A-2(i)(4), Proposed Income Tax Regs., 45 Fed. Reg. 52399(1980), amended 48 Fed. Reg. 33320 (1983).

Petitioners bear the burden of proving the amount of their use and their entitlement to a deduction. *Welch v. Helvering,* 290 U.S. 111 (1933); Rule 142(a). Initially, petitioners have conceded that 89 percent of their residence was utilized for day-care purposes and that 11 percent was used for personal use.

Petitioners maintained a log which reflected the name of the child, the date, and time spent at petitioners' residence. Respondent, based upon the log, determined that petitioners used their residence about 75 hours per week. Based upon petitioners' testimony we have redetermined that petitioners used their residence about 90 hours per week. Our finding is based upon the preparation and clean-up time which is not reflected on petitioners' log and upon the fact that petitioners occasionally provided day-care service on weekends. Respondent's determination of 75 hours per week is apparently based upon a 5-day week and 15 hours' use per day. With 90 in the numerator and 168 in the denominator, petitioners would be entitled to 54 percent of 89 percent of the items claimed on their returns in connection with day care, except for the lawn care. The 89 percent limit does not apply to the lawn care because it appears that the children had exclusive use of that area during the time day care was being provided. Accordingly, 54 percent of the $532 and $608 claimed for lawn care in 1983 and 1984, respectively isallowable.

As discussed previously, petitioner's motion to dismiss is denied and to reflect the foregoing,

> *An appropriate order will be entered and decision will be entered under Rule 155.*