ANTHONY TORTU, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tortu v. Commissioner
Docket No. 25646-93
United States Tax Court
T.C. Memo 1994-243; 1994 Tax Ct. Memo LEXIS 249; 67 T.C.M. (CCH) 3029; May 31, 1994, Filed *249 Anthony Tortu, pro se. For respondent: Ruth M. Spadaro. PARR
PARR
MEMORANDUM OPINION PARR, Judge: This matter is before us on cross-motions by the parties for entry of decision. A brief chronology is in order. The notice of deficiency on which this case is based was sent to petitioner and his then wife, Marie V. Tortu, on December 21, 1981. Respondent determined deficiencies in petitioner's Federal income tax for 1975 in the amount of $ 20,820 and for 1976 in the amount of $ 23,264. Petitioner and Ms. Tortu timely filed a joint petition, Docket No. 6310-82. When the petition was filed they resided in Cherry Hill, New Jersey. On September 22, 1982, Anthony Tortu filed a chapter 11 petition with the U.S. Bankruptcy Court for the District of New Jersey. All proceedings as to Anthony Tortu were required to be automatically stayed pursuant to 11 U.S.C. sec. 362(a)(8); however, the Court was not notified at that time and we were unaware of the bankruptcy proceeding. This case was not set for trial until 1986, presumably because it involved partnerships which were the subject of test cases. On April 16, 1986, petitioners, through counsel, *250 signed a stipulation to be bound by the result in the consolidated cases of Penza v. Commissioner, docket No. 4538-84, and Procacci v. Commissioner, docket Nos. 5170-82 and 5787-82. Therefore, this case was continued. In due course, the case was again scheduled for trial on March 16, 1987, and was again continued by joint motion of the parties on December 15, 1986. It was not until August 12, 1991, when respondent filed a notice of proceeding under bankruptcy code, that the Court became aware of petitioner's earlier filing with the U.S. Bankruptcy Court. By our order dated August 14, 1991, we acknowledged the stay and ordered the parties to file with the Court on or before September 16, 1991, a written report to show cause why the proceedings should not also be stayed as to petitioner Marie V. Tortu. On September 19, 1991, the parties filed a joint status report in which they notified the Court that Anthony Tortu and Marie V. Tortu are now divorced; that Marie V. Tortu was not a party to the bankruptcy petition; that her counsel wished to sever Ms. Tortu's case from Mr. Tortu's case, and that the proceedings should not be stayed as to Marie V. Tortu. On the same date, *251 Bruce I. Kogan entered an appearance on behalf of Marie Tortu. On October 8, 1991, we ordered Marie Tortu to file a motion to sever and attach a check for $ 60 for payment of the filing fee of a new case and a stipulated decision document by November 14, 1991. This order was apparently based on oral representations to the Court that Ms. Tortu's case had been settled. However, Marie Tortu failed to comply with the order and proceedings as to her were stayed by the Court's order dated January 13, 1992. That order also required the parties to file with the Court a report as to the then-present status of the related bankruptcy proceeding, on or before June 26, 1992. On June 9, 1992, Ms. Tortu moved for leave to file an amendment to her petition in order to raise the issue of innocent spouse relief under section 6013(e). The motion to amend was granted on June 18, 1992, and the amendment was filed on that date. On June 26, 1992, respondent filed a status report as to the bankruptcy proceeding by petitioner Anthony Tortu. Respondent stated that "at some point after said petition was filed petitioners' bankruptcy case was converted to a Chapter 7 bankruptcy proceeding and was consolidated *252 with the Chapter 7 bankruptcy proceeding of Hampton House of Camden, New Jersey Inc." Respondent further stated that the bankruptcy proceeding was still pending before the Bankruptcy Court. We ordered a further status report to be filed on or before January 22, 1993. Meanwhile, respondent filed an answer to Marie Tortu's amendment to petition. On January 25, 1993, respondent advised the Court that the bankruptcy proceeding of Anthony Tortu was closed on October 30, 1992. On January 28, 1993, we therefore lifted the stay of proceedings and restored the case to the general trial docket. On February 16, 1993, Irwin Jay Katz of the Widener University School of Law Tax Clinic entered an appearance on behalf of Marie Tortu. Bruce I. Kogan, the former director of the Widener Clinic and her former counsel of record, was permitted to withdraw from the case. On April 12, 1993, Anthony Tortu's attorneys filed a motion for leave to withdraw, and that motion was granted on April 12, 1993. In their motion counsel advised that Procacci v. Commissioner, 94 T.C. 397 (1990), was decided in favor of the taxpayers and accordingly there is no deficiency for petitioners *253 resulting from the Medford Country Club Partnership. In the stipulation to be bound signed by petitioner and Ms. Tortu, they had also agreed to a settlement regarding the Dean Associates Partnership loss which, according to their attorney, was a deduction equal to their cash investment. Therefore, according to Anthony Tortu's attorneys, no issues remained to be decided. [1] Respondent does not dispute this. We granted petitioner's counsel's motion for leave to withdraw on April 12, 1993. Even though petitioner and his wife had signed a stipulation to be bound that should have disposed of the case, neither of them had signed *254 a stipulated decision; therefore the case remained outstanding. Thus, on July 1, 1993, the Court sent Anthony and Marie Tortu a notice setting the case for trial on December 6, 1993. On November 22, 1993, the Court held an informal telephonic conference with Anthony Tortu, Irwin Jay Katz (attorney for Marie Tortu), and Ruth Spadaro, respondent's counsel. The parties requested a continuance from the Philadelphia trial calendar, and sought the Court's advice as to how to proceed. While Mr. Tortu and respondent agreed that the amount of liability had been established by the stipulation to be bound and subsequent events, Mr. Tortu argued that the liability had been extinguished by the Bankruptcy Court. Ms. Tortu wished to go forward with an innocent spouse defense, but was willing to settle the case on the basis of an offer in compromise. However, the offer would require time to be processed through the Internal Revenue Service (IRS). Neither respondent nor Mr. Tortu was able to obtain all the necessary documents from the Bankruptcy Court in New Jersey, where the documents are apparently in storage, but both were continuing to attempt to get them. In the interests of efficiency *255 and fairness to each party, on December 3, 1993, the Court ordered that the case be stricken from the December 6 trial session, that Anthony Tortu be severed as a petitioner from the case at docket No. 6310-82 and assigned docket No. 25646-93, and that his place of trial be changed to Miami, Florida. Finally, on December 13, 1993, we received a letter from Anthony Tortu, which we filed as his motion for entry of decision showing no deficiencies in income tax for the years 1975 and 1976. Respondent filed an objection in response to our order to show cause, attaching a proposed decision which reflected adjustments downward from the notice of deficiency. Since it is apparent to the Court that there are no remaining issues for decision, we ordered that respondent's objection be recharacterized as a motion for entry of her proposed decision. Papers attached to the parties' respective motions shed both light and shadow on what actually occurred in the bankruptcy proceeding. It is clear that petitioner filed a chapter 11 petition with the U.S. Bankruptcy Court for the District of New Jersey, Case No. 82-06531, on September 22, 1982. At some point thereafter, petitioner's bankruptcy *256 case was converted to a chapter 7 proceeding and was consolidated with the chapter 7 proceeding of Hampton House of Camden New Jersey, Inc., Case No. 82-05799. Petitioner did not originally list on his bankruptcy schedules, as an outstanding liability, the 1975 and 1976 Federal income tax deficiencies in issue before us. On or about July 25, 1991, petitioner filed a notice with the Bankruptcy Court requesting that the court permit him to (a) amend his bankruptcy petition to add respondent as a claimant in the amounts of $ 12,004 for 1975 and $ 10,293 for 1976 (the amounts set forth in respondent's proposed decision); and (b) execute a stipulated decision in the Tax Court for such amount. In this request to amend, petitioner stated that this IRS claim was unintentionally omitted from his petition; that he had been under the impression that all outstanding claims relating to taxes owed to IRS, as well as State and local real estate taxes, had been resolved in the negotiations regarding the related business case; and that he was not aware until he received a notice from IRS dated April 24, 1991, that this claim was still unresolved. Petitioner further stated that he was unable to *257 dispute the amount claimed and wished to consent to it, but wanted to amend his bankruptcy petition to include this amount. (Petitioner had listed the IRS as a potential creditor in his petition, but not in connection with this claim.) Petitioner also stated: "Finally, if I am permitted to amend my schedules, I ask that the Court discharge this claim, in accordance with the provisions of the Bankruptcy Code, in the final administration of my estate." On October 29, 1991, U.S. Bankruptcy Judge Judith H. Wizmur ordered the following: 1. The Debtor's Petition, at Schedule A-1 is hereby amended to specifically state and include as part of the claim of the Internal Revenue Service, for the calendar years 1975 and 1976, based upon the income tax returns filed for said years in the sum of $ 12,004.00 for 1975 and $ 10,293.00 for 1976. 2. The Debtor shall be permitted to execute a Decision Document with the Internal Revenue Service setting forth the amount of the deficiency as aforesaid for the calendar years 1975 and 1976. 3. The amount of the claim of the Internal Revenue Service as set forth herein shall be subject to discharge upon the final administration of the Debtor's Bankruptcy *258 proceedings, together with all of the claims listed in Debtor's petition and schedules as amended.
Petitioner did not execute a decision document with the Internal Revenue Service. On November 27, 1991, petitioner was discharged. The discharge shows that secured claims of $ 1,334,826.69, priority claims of $ 156,308.76, and claims of general creditors totaling $ 379,394.28 have been allowed. It also shows total unpaid obligations of $ 204,747.53. Petitioner argues that the deficiencies in issue have been discharged. Respondent argues that these deficiencies are priority claims within the meaning of 11 U.S.C. sec. 507(a)(7) and are not dischargeable debts in a chapter 7 bankruptcy proceeding, citing 11 U.S.C. secs. 523(a)(1)(A) and 507(a)(7)(A)(iii). There is no dispute remaining in this case as to the amount of the deficiency. The only dispute is whether the debt has been discharged. While the Tax Court has jurisdiction to redetermine Federal income tax deficiencies with respect to prebankruptcy tax years, we have no jurisdiction to determine whether petitioner's taxes were discharged in the bankruptcy *259 proceeding. See Neilson v. Commissioner, 94 T.C. 1 (1990); Bilski v. Commissioner, T.C. Memo. 1994-55; McAlister v. Commissioner, T.C. Memo. 1993-166. This Court has limited jurisdiction conferred by statute. See sec. 7442; Neilson v. Commissioner, supra at 9. The determination of an income tax deficiency is separate from collection of the tax. Swanson v. Commissioner, 65 T.C. 1180, 1184 (1976). Here there is some evidence that petitioner attempted to discharge this tax in bankruptcy, but there is no definitive evidence that this goal was accomplished. However, even if there were such evidence, we are without subject matter jurisdiction to so find. If petitioner wishes a ruling on his dischargeability position, he must seek the jurisdiction of the Bankruptcy Court. See Neilson v. Commissioner, supra at 9. There being no further dispute concerning the tax deficiency, over which we do have jurisdiction, An appropriate order and decision will be entered.
Footnotes
1. We note from Exhibit A to respondent's objection, which attaches a copy of respondent's revised determination apparently dated Apr. 24, 1991, that respondent did indeed allow the significant adjustments to the original notice of deficiency, including an automatic medical expense adjustment, which reduced the deficiencies for 1975 to $ 12,004 and for 1976 to $ 10,293, the amounts now in issue.↩