T.C. Memo. 2001-292

UNITED STATES TAX COURT

JIMMIE E. CANNON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21241-97.                    Filed November 5, 2001.

Jimmie E. Cannon, pro se.

<u>Timothy F. Salel</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies in and
additions to tax with respect to petitioner's Federal income
taxes as follows:

| Year | Deficiency | Additions to Tax | |
|------|------------|------------------|--|
| | | Sec. 6651(a)(1) | Sec. 6654 |
| 1982 | $79,254 | $19,814 | $7,716 |
| 1983 | 31,758 | 7,940 | 1,943 |

The issues for decision are whether petitioner filed Federal income tax returns for the years in issue; whether respondent properly determined petitioner's income from the practice of law; whether petitioner is entitled to any deductions beyond those conceded by respondent; and whether petitioner is liable for the additions to tax determined by respondent. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Petitioner resided in La Mesa, California, when he filed his petition in this case.

Petitioner was admitted to practice law in California in June 1976. During 1982 and 1983, petitioner specialized in immigration law and handled a high volume of amnesty cases, deportation hearings, asylum applications, and family petitions. Petitioner's practice was conducted under the name Santa Ana Immigration Center (SAIC).

Petitioner maintained bank accounts in the name of SAIC and held signature authority over the bank accounts.

During 1982, SAIC was operated out of a commercial office located on North Broadway in Santa Ana, California. In 1983, SAIC moved to an office on Main Street in Santa Ana.

During 1982 and 1983, petitioner was married to Crucita Cannon. Crucita Cannon worked with petitioner at SAIC. Petitioner also had a secretary named Judy Sanchez.

Hanibal "Mike" Justo (Justo) and his wife, Graciela Justo (the Justos), were bilingual (English and Spanish) and ran a small income tax service and wedding chapel in Santa Ana. The Justos referred some cases to petitioner and assisted petitioner in dealing with Hispanic clients.

Petitioner and the other persons working in his office maintained 22 receipt books in which they recorded payments received from and balances due from clients of SAIC. The payments included fees earned by petitioner as well as reimbursements for filing fees and payments for services rendered by persons other than petitioner.

The money receipt books reflected total payments of $339,866.54 received during 1982 and $130,710 received during 1983. Petitioner also received fees of $500 from Octovio Molina and $2,000 from Gerald Scott during 1982 that he did not record in the money receipt books.

Early in 1983, petitioner's sister, Sharon Cannon, attempted to set up books for SAIC for 1982 and 1983. She reviewed the receipt books, ledger cards, and client files. In 1983, she set up a client billing system on the computer. She secured from the

Justos check stubs and miscellaneous receipts for expenses of SAIC. She concluded her work by October 1983.

Prior to 1985, petitioner commenced an action for dissolution of his marriage to Crucita Cannon. In a declaration filed July 17, 1985, in the divorce action, petitioner represented:

> The income records for my immigration law practice for last years which I have in my possession indicate that there was in the area of $13,000 or so per month that was transferred through the business account-- money that * * * [P's wife, Crucita] took in, deposited and (I'm sure) transferred out. Without her cooperation it will be very difficult for me to determine more about my practices [sic] income. I should point out that with * * * [Crucita] controlled the mail at my office and with * * * [Crucita's] mother controlling the mail at my residence they were effectively able to keep me in the dark about the true extent of income and where the money was being spent. Based upon what I know now, I believe that * * * [Crucita] systematically looted income from my immigration law practice.

In an Income and Expense Declaration filed in the divorce action on August 30, 1985, petitioner represented that his gross monthly income, his net monthly disposable income, his other income, and various other items were "unknown".

In May 1986, petitioner rented commercial space on South Broadway in Santa Ana from Jorge Nanni (Nanni). In August 1988, Nanni commenced eviction proceedings against petitioner. Nanni delivered two boxes containing 22 money receipt books to an office of the Internal Revenue Service (IRS).

In November 1988, agents of the Immigration and Naturalization Service (INS) executed an arrest warrant for Crucita Cannon and a search warrant for the premises of SAIC. Crucita Cannon was subsequently convicted of selling fraudulent immigration documents.

On December 10, 1990, petitioner was disbarred from the practice of law in California. In its opinion, Cannon v. State Bar of Cal., 51 Cal. 3d 1103, 1115 (1990), the Supreme Court of the State of California found that petitioner had committed "multiple instances of serious misconduct, many of which involved moral turpitude."

The statutory notice in this case was prepared based on the receipt books delivered to the IRS by Nanni. The notice was sent to petitioner on July 24, 1997. Respondent determined that petitioner had Schedule C, Profit or Loss From Business, income from his law practice of $166,001 in 1982 and $73,837 in 1983. The explanation of adjustments that was attached to the statutory notice stated:

> a. It is determined that Santa Ana Immigration Center realized income in the amount of $332,002.00 in the tax year ending December 31, * * * [1982] and $147,674.00 in the tax year ending December 31, 1983. Under the community property rules of the State of California, one-half of this income is taxable to you. Accordingly, your taxable income is increased by $166,001.00 for 1982 and $73,837.00 in 1983.

Respondent also determined that petitioner was liable for self-employment tax and for additions to tax for failure to file tax returns and for failure to pay estimated tax.

In the petition filed October 27, 1997, petitioner's disagreement with the adjustments was stated as follows:

> I received no taxable income during the tax years of 1982 and 1983 from Santa Ana Immigration Center or any other source; therefore there is no responsibility for paying taxes in this matter because no income was personally collected, earned or received.

At no time did petitioner amend the petition to allege that he filed returns or to state any other special matter.

The case was first set for trial on June 7, 1999, by notice served December 31, 1998. On May 26, 1999, petitioner filed a petition with the U.S. Bankruptcy Court for the Southern District of California under 11 U.S.C. chapter 7. On June 9, 1999, petitioner filed an adversary proceeding in the bankruptcy court against the United States of America. The gist of petitioner's complaint was that his books and records used by the IRS in making the determinations at issue in this case were wrongfully seized by the INS in 1988. Pursuant to stipulation, on August 4, 1999, petitioner's action against the United States of America was dismissed.

On June 16, 1999, petitioner also filed an adversary proceeding in the bankruptcy court against a former employee of the INS and against Nanni. The gist of the complaint in this

action was also that petitioner's records had been wrongfully seized. On October 20, 1999, the bankruptcy court granted a motion for summary judgment in favor of the former employee of the INS. The bankruptcy court ruled that petitioner's "constitutional tort claim" would not stand because petitioner (plaintiff in the bankruptcy adversary proceeding):

> plainly had available the remedies afforded in Rule 41 of the Federal Rules of Criminal Procedure by which he could have challenged the search of the subject offices and sought return of his property. Plaintiff clearly knew the search occurred in 1988, because he was at the site when it took place, and it would be inappropriate 11 years after the fact to imply a private cause of action against Defendant when Plaintiff could have availed himself of the Rule 41 remedy at the time of the search.

The bankruptcy court further held that the action was barred by the statute of limitations and that the former INS employee should prevail on his claim of qualified immunity, stating: "No evidence was adduced in response to * * * [the former employee's] assertion that he did not provide any documents to the I.R.S." On June 26, 2000, petitioner's adversary complaint against Nanni was dismissed and closed.

## OPINION

Prior to trial of this case, petitioner's strategy was to refuse to cooperate with respondent and instead to pursue arguments, not raised in the pleadings, that respondent was somehow precluded from pursuing this case because of misconduct in relation to the seizure of petitioner's records in 1988.

During trial, while asserting the same claims, petitioner successfully showed errors in respondent's schedules summarizing the 22 receipt books. Those records, as explained in petitioner's testimony, also reflected nontaxable reimbursements and deductible expenses. Petitioner did not present any additional evidence of deductions. In his opening brief, respondent corrected the errors and made appropriate concessions based on the receipt books received in evidence. Petitioner has not made any further attempt to show errors in respondent's revised computations. Instead, he pursues a hodgepodge of nonmeritorious contentions.

Respondent's Position

In respondent's brief, respondent tabulated the various receipt books and derived new totals of gross receipts for petitioner for 1982 and 1983. Respondent's revised totals are $339,866.54 for 1982 and $130,710 for 1983. In recomputing the gross receipts, respondent omitted items identified in the receipt books as reimbursement of expenses, a loan from petitioner's father, and receipts marked "VOID". Respondent concedes that petitioner paid wages of $10,901.53 in 1982 and $24,216 in 1983. Respondent also concedes that petitioner paid filing fees of $210 in 1982 and $175 in 1983, paid for services rendered by Justo in the amount of $1,907.50 in 1982, and paid bail bond expenses of $500 in 1982. Respondent also concedes

that petitioner is entitled to deduct $1,356.94 as rental expenses in 1983. Finally, respondent concedes that petitioner is entitled to deduct one-half of the self-employment tax imposed for 1982 and 1983 as recalculated. With respect to the items of income and deductions, respondent computed petitioner's tax liability on one-half of the net income determined, pursuant to California community property law.

Petitioner's Contentions

Petitioner contends that respondent has the burden of proof, by clear and convincing evidence, in this case. He equates respondent's determination that he failed to file tax returns as fraud under section 7454(a) and Rule 142(b). Respondent, however, has not determined the applicability of a civil fraud penalty in this case. The addition to tax for failure to file, section 6651(a), and not the addition to tax for fraud, (former) section 6653(b), is an issue. Failure to file tax returns is not the equivalent of fraud for purposes of civil tax penalties. See, e.g., Kotmair v. Commissioner, 86 T.C. 1253, 1261-1262 (1986); Koeneman v. Commissioner, T.C. Memo. 1958-186; cf. current secs. 6651(f), 6663. The clear and convincing standard is not applicable in this case. The preponderance of the evidence supports respondent's position on each of the issues.

Petitioner argues that he did file tax returns and that the statute of limitations bars the deficiency notice in this case.

He claims that he testified that he filed the required returns. However, neither the transcript pages that he cites nor any other pages of the transcript contain such testimony. His contention throughout this case, beginning with the petition, was that he did not have taxable income for 1982 or 1983. He never stated specifically that he prepared or filed Federal income tax returns for 1982 or 1983. He did not plead the bar of the statute of limitations in the petition. He never provided copies of any returns, details concerning the time or manner of preparation of returns, or any other credible evidence that supports his belated assertion in the briefs that he filed returns for the years in issue. The official IRS transcripts of his account received in evidence as stipulated exhibits show that there were no returns filed prior to the substitutes for returns filed in 1995. We do not believe that petitioner filed Federal income tax returns for the years in issue.

Petitioner argues that his inability to produce records of his income and deductions is attributable to the Government's seizure of his records in 1988 and failure to return those records to him. Again, we do not believe petitioner's assertions. Petitioner called as a witness his sister, who testified that she worked on the books of SAIC in 1983. In response to petitioner's questions, his sister indicated that "it was kind of hard to discern" whether Justo or petitioner made a

profit.  Petitioner presented no evidence of preparation of tax returns or schedules showing his income for 1982 or 1983.

During his divorce proceedings in 1985, petitioner represented that he did not know what his income was, allegedly because of actions by his then wife.  Based on his sister's description of the efforts she made in 1983 to reconstruct the business income and his own assertions in 1985, we do not believe that any seizure of records in 1988 was the cause of petitioner's inability and failure to report correctly his income and expenses for 1982 or 1983.

During the years in issue and in his proposed findings of fact in his brief, petitioner has represented that he conducted SAIC as sole practitioner.  Petitioner now contends that the notice of deficiency "is invalid on its face because * * * [he] was not named as a partner in the notice of deficiency".  Petitioner's argument is based on the alleged treatment of petitioner and Justo as partners for employment tax purposes by the IRS.  He contends that the Court does not have jurisdiction because the Commissioner did not issue a notice of final partnership administrative adjustment under section 6226.  Regardless of the lack of factual support for petitioner's argument, section 6226 applies only to partnerships having more than 10 partners.  Sec. 6231(a)(1)(B).

Petitioner claims that any 1982 and 1983 income tax liabilities were discharged as a result of the bankruptcy proceedings. Whether a discharge applies to a taxpayer's income tax deficiencies must be determined by the bankruptcy court. See Neilson v. Commissioner, 94 T.C. 1, 8-9 (1990); Graham v. Commissioner, 75 T.C. 389, 399 (1980). Petitioner's other contentions regarding the effect of the bankruptcy are predicated on his erroneous assumption that respondent has the burden of proof that the taxes were not discharged or on legal arguments not properly pleaded in this case.

Petitioner's recurrent theme is that some misconduct on the part of the Federal Government should inure to his benefit in this case. We are not persuaded by petitioner's claims of malfeasance and misconduct. Neither, apparently, was the bankruptcy court. Even in cases where questionable conduct is attributable to IRS agents, however, suppression of evidence generally is not a suitable sanction in a civil tax case. Weiss v. Commissioner, 919 F.2d 115, 118-119 (9th Cir. 1990), affg. T.C. Memo. 1988-586; Jones v. Commissioner, 97 T.C. 7, 27 (1991); Miller v. Commissioner, T.C. Memo. 1998-72. We do not think any sanction is appropriate here.

The remainder of petitioner's contentions, to the extent that they are intelligible, are so patently lacking in merit that they do not require a response.

Summary and Conclusions

Petitioner blames his present situation on the U.S. Government, the Justos, his former wife, his former landlord, and unidentified others. We are satisfied that petitioner's predicament is of his own making. Respondent has, by the receipt books in evidence and petitioner's testimony, presented substantive evidence that petitioner received unreported income. See Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985); Petzoldt v. Commissioner, 92 T.C. 661, 687-690 (1989); Tokarski v. Commissioner, 87 T.C. 74 (1986). Petitioner has shown no error in respondent's corrected schedules of income set forth in respondent's opening brief. Petitioner has not identified any deductions to which he is entitled beyond those conceded by respondent based on the records in evidence. Petitioner's burden with respect to deductions is well established. See, e.g., Rockwell v. Commissioner, 512 F.2d 882 (9th Cir. 1975), affg. T.C. Memo. 1972-133. As explained above, we do not believe petitioner's claims that respondent is responsible for his inability to substantiate deductions. Even if the records had been lost or destroyed while in respondent's hands, however, petitioner would not be relieved of his burden with respect to deductions. See Foster v. Commissioner, 756 F.2d 1430, 1439 (9th Cir. 1985) (taxpayers' "self-certification of their record-keeping system is not a substitute for proof of their

deductions"), affg. and vacating on another issue 80 T.C. 34 (1983); Malinowski v. Commissioner, 71 T.C. 1120, 1124-1125 (1979); Sentinel Fin. Servs. v. Commissioner, T.C. Memo. 1992-733, affd. without published opinion 39 F.3d 1188 (9th Cir. 1994).

Section 6651(a)(1) provides for an addition to tax for failure to file Federal income tax returns. As discussed above, we do not believe petitioner's belated claim that he filed timely returns. He has shown no reasonable cause for failure to file the returns, and the section 6651(a)(1) addition to tax is sustained.

The addition to tax for failure to make estimated tax payments under section 6654 is imposed in the absence of special exceptions not applicable here. See generally Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980).

To reflect respondent's concessions,

Decision will be entered

under Rule 155.