T.C. Memo. 2013-167

UNITED STATES TAX COURT

GUILLERMO MERINO, JR., AND LISA MERINO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7518-11.                    Filed July 16, 2013.

R determined a deficiency in Ps' 2007 Federal income tax.
After Ps' concession, the issues for decision are: (1) whether I.R.C.
sec. 469 limits Ps' claimed losses from a real estate rental activity; (2)
whether Ps are liable for an I.R.C. sec. 6651(a)(1) addition to tax for
late filing; and (3) whether Ps are liable for an I.R.C. sec. 6662(a)
accuracy-related penalty.

Held: P-H failed to prove that he spent more time performing
services for a real estate trade or business than he spent performing
services for other trades or businesses. Therefore P-H is not a real
estate professional. The losses attributable to P-H's real estate rental
activity are subject to the passive activity limitations of I.R.C. sec.
469(a), and Ps do not qualify for the exception under I.R.C. sec.
469(i).

Held, further, Ps are liable for the I.R.C. sec. 6651(a)(1)
addition to tax.

**[*2]**     Held, further, Ps are liable for the I.R.C. sec. 6662(a) accuracy-related penalty.

Guillermo Merino, Jr., pro se.[1]

Sebastian Voth, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a petition for redetermination of an income tax deficiency that respondent determined for petitioners' 2007 tax year.  After a concession[2] by petitioners, the issues for decision are:  (1) whether section 469 limits petitioners' losses from a real estate rental activity; (2) whether petitioners are liable for an addition to tax under section 6651(a)(1); and (3) whether petitioners are liable for an accuracy-related penalty under section 6662(a).[3]

---

[1]At trial Mr. Merino submitted to the Court a letter of consent from Ms. Merino informing the Court that she authorized Mr. Merino to act on her behalf.

[2]Petitioners conceded the disallowance of $21,123 of their deduction for home mortgage interest.

[3]Unless otherwise noted, all section references are to the Internal Revenue Code of 1986 as amended and in effect for the year in issue.  All Rule references

(continued...)

**[*3]**                    FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of facts and supplemental stipulation of facts with their accompanying exhibits are hereby incorporated by reference into our findings.  At the time they filed their petition, petitioners resided in California.

Lisa Merino was not a real estate professional during 2007.  Guillermo Merino, Jr., was the president and sole shareholder of One Stop Home Loans (One Stop), an S corporation, in 2007.  Mr. Merino organized One Stop in 2005 to independently process loan applications for various lenders.  A typical day at One Stop for Mr. Merino consisted of supervising between two and four employees, making calls, bringing borrowers or potential borrowers into the office, and reviewing and processing files and loans.  Mr. Merino was responsible for monitoring the finances of One Stop, and all of the money went through his account.  In 2007 Mr. Merino received income of $112,489 reported on a Schedule K-1, Shareholder's Share of Income, Deductions, Credits, etc., and income of $20,000 reported on a Form W-2, Wage and Tax Statement, from One Stop.[4]

---

[3](...continued)
are to the Tax Court Rules of Practice and Procedure.

[4]Petitioners' Form 1040, U.S. Individual Income Tax Return, reported a
(continued...)

[*4]   Also in 2007 Mr. Merino operated a business listed as Mona Vie, Inc., on petitioners' Schedule C, Profit or Loss From Business, attached to their 2007 Form 1040.  This business involved the sale and distribution of an acai berry drink.  The business was not associated with Mr. Merino's mortgage business or his real estate rental activity.

Mr. Merino's third income-producing activity in 2007, and the activity at the center of the dispute in this case, is his real estate rental activity.  He owned seven properties in 2007, one in Colorado and six in Nevada.  To handle the Colorado property, Mr. Merino used a management company throughout 2007.  As consideration for the management company's services in 2007, he paid $120 per month.  The management company collected rent, leased or rented the property, looked into problems with the property, and talked with the homeowners association.  For the six Nevada properties, Mr. Merino engaged the services of an assistant at the rate of $50 to $75 per month per property who collected checks from tenants and handled assigned tasks requested by Mr. Merino.  Examples of such requests included opening doors for locked-out tenants and arranging for

---

[4](...continued)
total of $199,015 in wage income.  Presumably $179,015 of this income is attributable to Mrs. Merino.  Petitioners reported their adjusted gross income as $293,297.  Respondent's adjustments resulted in adjusted gross income of $362,406.

**[*5]** delivery of rock for a property's yard landscaping. In late 2007 or sometime in 2008 Mr. Merino prepared a summary of the time he spent in connection with the rental properties.

On April 14, 2008, petitioners filed a request for an automatic extension of time to file their tax return, which made their return due on October 15, 2008. Petitioners did not file their 2007 tax return until March 14, 2010. On the return petitioners reported losses from all seven rental properties on their Schedule E, Supplemental Income and Loss, for the 2007 tax year. Respondent issued a notice of deficiency, and petitioners timely petitioned this Court. A trial was held on March 23, 2012, in Los Angeles, California.

OPINION

I.     Burden of Proof

The Commissioner's determination of a taxpayer's liability is generally presumed correct, and the taxpayer bears the burden of proving that the determination is improper. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, pursuant to section 7491(a), the burden of proof on factual issues that affect the taxpayer's tax liability may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue." Petitioners have not established that they meet the requirements under section

**[*6]** 7491(a)(1) and (2) for such a shift. Consequently, the burden of proof remains on them. Moreover, deductions are a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to any of the deductions claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

II.     Real Estate Rental Activity

Section 469 generally limits a taxpayer's deductions attributable to "passive activities" to the amount of the income generated by the taxpayer's "passive activities". Madler v. Commissioner, T.C. Memo. 1998-112, slip op. at 6. A "passive activity" includes: (1) any activity which involves the conduct of a trade or business and in which the taxpayer does not materially participate, and (2) except for the rental real estate activity of certain taxpayers engaged in the real property trade or business as provided in section 469(c)(7), any rental activity without regard to whether the taxpayer materially participates in the activity. Sec. 469(c)(1), (2), (4), (7). The parties do not dispute that the activity in question here is rental activity that meets the definition of a real property trade or business. Rather, the question is whether Mr. Merino was actively engaged in a real property trade or business as provided in section 469(c)(7) (i.e., whether he was a real estate professional).

**[\*7]**    A taxpayer qualifies as a real estate professional, and his rental real estate activity is not per se a passive activity, if:

>    (i) more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

>    (ii) such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

Sec. 469(c)(7)(B).  In the case of a joint return, a spouse must separately satisfy the requirements of section 469(c)(7) to qualify as a real estate professional.  Id. Further, unless the taxpayer elects otherwise, the taxpayer must satisfy the requirements of material participation as applied separately to each property or interest in rental real estate.  Sec. 469(c)(7)(A).  Without an election, in addition to performing more than 750 hours of services in a real property trade or business, the taxpayer must materially participate in each rental activity.  Shaw v. Commissioner, T.C. Memo. 2002-35, slip op. at 27-28.[5]

Respondent contends that petitioners failed to prove that:  (1) Mr. Merino performed more than half of his services in real property trades or businesses and

_____

[5]Petitioners did not make such an election for the 2007 tax year.  They contend, however, that we should honor a late election.  We need not decide this issue because, as we find infra, petitioners do not meet the requirements of sec. 469(c)(7) without regard to such an election.

**[\*8]** (2) Mr. Merino performed more than 750 hours of services in a real property trade or business. We agree. Petitioners presented no evidence of how many hours Mr. Merino spent at One Stop and Mona Vie. Clearly, the time spent at One Stop was significant as petitioner supervised between two and four employees, ran the business as president, processed and reviewed files and loans, and monitored finances. Because Mr. Merino failed to present evidence[6] of the time spent on non-rental-activity services, he failed to meet the first requirement of section 469(c)(7)(B). Because he failed to meet this requirement, the real estate rental activity is a passive activity and the limitation on losses applies.

Further, we find that petitioners failed to carry their burden of proof with respect to section 469(c)(7)(B)(ii). Mr. Merino's summary of hours is insufficient to substantiate the 750 hours requirement. A taxpayer may establish the 750 hours "by any reasonable means". Sec. 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988). "Any reasonable means" does not require the

---

[6]Mr. Merino's statements in his briefs that he spent only 20 hours per week on One Stop because he was staying at home caring for his wife and infant daughter, however true or sympathetic, are not evidence. See Rule 143(c) ("[S]tatements in briefs * * * do not constitute evidence."). At trial Mr. Merino rested without calling any witness. Respondent called Mr. Merino as a witness and examined him at length. Mr. Merino, however, chose not to offer any cross-examination. Consequently, he never testified about caring for his wife or infant daughter. Had he done so, that testimony would have constituted admissible evidence and would have been subject to cross-examination by respondent.

**[*9]** taxpayer to have contemporaneous records compiled daily. <u>Id.</u> Rather, the taxpayer may use methods including, but not limited to, "the identification of services performed over a period of time and the approximate number of hours spent * * * based on appointment books, calendars, or narrative summaries." <u>Id.</u> For the purposes of section 469, "the regulations do not allow a postevent 'ballpark guesstimate.'" <u>Moss v. Commissioner</u>, 135 T.C. 365, 369 (2010) (citing <u>Bailey v. Commissioner</u>, T.C. Memo. 2001-296, and <u>Goshorn v. Commissioner</u>, T.C. Memo. 1993-578).

Mr. Merino acknowledged that he prepared the summary using his estimates and his memory as to how much time he spent on certain tasks with respect to the real estate rental activity. Unfortunately, we found Mr. Merino's summary to be less of an approximation and more of a "ballpark guesstimate". <u>See</u> <u>Moss v. Commissioner</u>, 135 T.C. at 369. In <u>Bailey v. Commissioner</u>, T.C. Memo. 2001-296, the taxpayer kept a calendar of visits to rental properties but did not track hours spent on rental activities. We rejected the taxpayer's narrative summary, which she reconstructed before trial, as not a "reasonable" means because it was uncorroborated and not reliable. <u>Id.</u>, slip op. at 13. Mr. Merino credibly testified that he created the summary in 2007 or 2008 shortly after a flood destroyed his records. <u>See</u> <u>Villarreal v. Commissioner</u>, T.C. Memo. 1998-420, slip op. at 6

**[\*10]** ("When a taxpayer's records are lost or destroyed through circumstances beyond his control, he is entitled to substantiate deductions by reconstructing his expenditures through other credible evidence. Malinowski v. Commissioner, 71 T.C. 1120, 1125 (1979).").

Mr. Merino's summary was not created from contemporaneous documentation, but rather it is a postevent reconstruction from memory. Compare Pohoski v. Commissioner, T.C. Memo. 1998-17, slip op. at 13-14 (accepting the taxpayers' postevent narrative summary because it was compiled using contemporaneous records and was supported by credible testimony and other objective evidence), with Bailey v. Commissioner, slip op. at 13 (rejecting the taxpayer's uncorroborated summary in part because she assigned hours to tasks "based solely on her judgment and experience as to how much time the activities must have taken her"). Mr. Merino's records are not contemporaneous; they must therefore be a "reasonable means" of establishing the extent of his participation and not a "postevent ballpark guesstimate". Moss v. Commissioner, 135 T.C. at 369; sec. 1.469-5T(f)(4), Temporary Income Tax Regs., supra.

Mr. Merino's estimates, however well meaning, are unreliable and uncorroborated. For instance, we are skeptical that Mr. Merino on average: purchased and had delivered one appliance per month for at least one of his seven

[*11] properties; received a notice of violations of homeowners association rules requiring an hour of work at least once per week; or had a property with a problem that required a contractor every week.

Mr. Merino was unable to recall any specifics about any particular entry in his narrative summary or otherwise provide evidence as to the reliability of the summary. Furthermore Mr. Merino admitted an error in his chart, which improperly ascribed four hours of work per week to check writing when it should have been four hours per month. Correction of this error reduces the hours reported by 160 (i.e. (52 weeks x 4 = 208 hours claimed) minus (12 months x 4 = 48 actual hours) = 160 fictitious hours). Mr. Merino also counted all of his travel time when he went to visit his properties, including unrelated activities such as meals with friends and time spent sleeping. Finally, the summary does not clearly distinguish between or identify services Mr. Merino personally performed and services the Colorado management company or the Nevada assistant may have performed.

On the basis of the facts and circumstances of the summary and the lack of any corroborating evidence, such as invoices or letters to and from the homeowners associations, other than Mr. Merino's self-serving testimony, we find that the summary does not fall within the regulation's "any reasonable means".

[*12] See sec. 1.469-5T(f)(4), Temporary Income Tax Regs., supra; see also Hill v. Commissioner, T.C. Memo. 2010-200, slip op. at 13 (finding that the excessive hours claimed by the taxpayer on the noncontemporaneous reconstruction, relative to the tasks performed, diminished the credibility of the taxpayer's estimates), aff'd, 436 Fed. Appx. 410 (5th Cir. 2011).

Petitioners also do not qualify for the limited exception under section 469(i). This section allows a taxpayer to take into account up to $25,000 of the passive activity loss attributable to rental real estate activity in which the taxpayer actively participated for the year. Sec. 469(i)(1). This $25,000, however, begins to phase out for a taxpayer with a modified adjusted gross income that exceeds $100,000. Sec. 469(i)(3)(A). The exception is completely phased out when the taxpayer's modified adjusted gross income exceeds $150,000. Petitioners' modified adjusted gross income for the 2007 taxable year exceeds $150,000, and thus they cannot take advantage of this section.

**[\*13]** III.    Section 6651(a)(1) Addition to Tax[7]

Respondent bears the burden of production with respect to the section 6651(a)(1) addition to tax.  See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  To meet this burden, respondent must produce sufficient evidence establishing that it is appropriate to impose the addition to tax.  The burden of establishing that the failure to timely file their 2007 tax return was due to reasonable cause rather than willful neglect remains with petitioners.  See Higbee v. Commissioner, 116 T.C. at 447.

As a general rule, "any person made liable for any tax \* \* \* shall make a return or statement according to the forms and regulations prescribed by the Secretary."  Sec. 6011(a).  Returns for calendar year individual taxpayers are due on April 15 of the year following the tax year.  Sec. 6072(a).  If a taxpayer fails to file a return on time, section 6651(a)(1) imposes an addition to tax of 5% of the

_____

[7]At trial respondent raised the possibility that the sec. 6651(a)(1) addition to tax and the sec. 6662(a) accuracy-related penalty may have been discharged by Mr. Merino's bankruptcy proceeding.  The Court lacks jurisdiction to determine whether tax liabilities have been so discharged.  Neilson v. Commissioner, 94 T.C. 1, 9 (1990) (citing Graham v. Commissioner, 75 T.C. 389, 399 (1980)).  This lack of jurisdiction over the issue of discharge in bankruptcy "does not, however, limit our jurisdiction to redetermine those deficiencies and additions to tax."  McAlister v. Commissioner, T.C. Memo. 1993-166, 1993 WL 114165, at \*2.  Nonetheless respondent assures us that both the addition to tax and the accuracy-related penalty are nondischargeable and that Mr. Merino's bankruptcy did not discharge them.

[*14] tax required to be shown on the return for each month or fraction thereof for which there is a failure to file, not to exceed 25% in the aggregate. The penalty will not apply if the taxpayer shows that the failure is due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1).

The parties do not dispute that petitioners requested and received an automatic extension, which extended the due date of the return to October 15, 2008. Sec. 6081(a). The parties also do not dispute that respondent did not receive the return until March 14, 2010. Thus, respondent has met his burden of production. Petitioner consequently bears the burden of proving either timely filing or reasonable cause and lack of willful neglect. See Higbee v. Commissioner, 116 T.C. at 446. Petitioners presented no evidence on this issue.[8] We therefore hold for respondent on this issue.

IV.    Section 6662(a) Accuracy-Related Penalty

Respondent also bears the burden of production for the determined penalty and must produce sufficient evidence establishing that it is appropriate to impose

---

[8]In their briefs petitioners for the first time argue that they reasonably relied upon a tax professional. Petitioners did not present any evidence of reliance on a professional at trial, and we cannot accept the statements in the briefs as evidence. See Rule 143(c).

**[\*15]** the penalty.  See id.  However, the burden to establish that they acted with reasonable cause remains with petitioners.  See id. at 447.

Section 6662(a) imposes an accuracy-related penalty equal to 20% of an underpayment of tax attributable to one of five causes specified in subsection (b).  Respondent contends that petitioners are liable for the penalty because of negligence or disregard of the rules or regulations or, alternatively, because the underpayment is due to a substantial understatement of income tax.  See sec. 6662(b)(1) and (2).

For the purposes of the penalty, "'negligence' includes any failure to make a reasonable attempt to comply with the provisions of this title".  Sec. 6662(c).  Under caselaw, "'Negligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299), aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991).  A substantial understatement of income tax in the case of an individual is (with certain modifications which do not apply in this case) an understatement of income tax that exceeds the greater of (1) 10% of the tax

[*16] required to be shown on the return for the taxable year or (2) $5,000.  Sec. 6662(d)(1)(A).

There is an exception to the section 6662(a) penalty when a taxpayer can demonstrate that the taxpayer (1) had reasonable cause for the underpayment and (2) acted in good faith with respect to the underpayment.  Sec. 6664(c)(1). Regulations promulgated under section 6664(c) further provide that the determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances."  Sec. 1.6664-4(b)(1), Income Tax Regs.

Reliance on the advice of a tax professional may, but does not necessarily, establish reasonable cause and good faith for the purpose of avoiding a section 6662(a) penalty.  Sec. 1.6664-4(b)(1), Income Tax Regs.; see also United States v. Boyle, 469 U.S. 241, 251 (1985) (reliance on an accountant or attorney as to a matter of tax law may be reasonable); Canal Corp. v. Commissioner, 135 T.C. 199, 218 (2010) ("The right to rely on professional tax advice, however, is not unlimited.").  To avoid liability for a section 6662(a) penalty based on reliance on a tax professional, a taxpayer must meet the following three requirements:  "(1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the

**[*17]** adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment." Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); see also Charlotte's Office Boutique, Inc. v. Commissioner, 425 F.3d 1203, 1212 n.8 (9th Cir. 2005) (quoting with approval the above three-prong test), aff'g 121 T.C. 89 (2003). In addition, the advice must not be based on unreasonable factual or legal assumptions (including assumptions as to future events) and must not unreasonably rely on the representations, statements, findings, or agreements of the taxpayer or any other person. Sec. 1.6664-4(c)(1)(ii), Income Tax Regs.

Respondent has met his burden of production. He has shown that the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000, and we therefore need not decide whether petitioners were negligent or disregarded rules or regulations. Petitioners bear the burden of proving a defense to the penalty. See Higbee v. Commissioner, 116 T.C. at 447. Petitioners failed to present any evidence at trial as to reasonable cause.[9] We therefore find for respondent on this issue.

---

[9]Again petitioners attempted in their briefs to raise a reasonable cause defense based on reliance on a tax professional, but petitioners presented no evidence of such reliance at trial. Petitioners' statements in the briefs are not evidence. See Rule 143(c).

**[\*18]** The Court has considered all of petitioners' contentions, argument, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.  To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.