**Elizabeth SMITH, Appellant,**

v.

**Searcy M. FERGUSON, Jr. and S.M. Ferguson, Inc., Appellees.**

No. 05–99–01770–CV.

Court of Appeals of Texas, Dallas.

Feb. 1, 2005.

Rehearing Overruled April 29, 2005.

Christopher M. Weil, Weil & Petrocchi, P.C., Jeffrey Wallace Hellberg, Jr., Dallas, for appellant.

Marshall M. Searcy, Kelly, Hart & Hallman, P.C., Fort Worth, for appellee.

Before Justices BRIDGES, FRANCIS, and LANG–MIERS.

## OPINION

Opinion by Justice BRIDGES.

Elizabeth Smith appeals the judgment denying her counterclaim against her ex-husband, Searcy M. Ferguson, Jr., in which she asserts that Ferguson is liable for unpaid property taxes on a property she was awarded in the parties' divorce. Ferguson cross-appeals, asserting the trial court erred in granting summary judgment against him on a number of causes of action he brought as plaintiff against Smith. We affirm the denial of recovery by Smith on her counterclaim and affirm the trial court's summary judgment against Ferguson on his claims against Smith.

### Facts

In January 1987, Smith and Ferguson agreed to a final judgment and decree of divorce, which incorporated an Agreement Incident to Divorce (AID) dated November 1986. Controversies between the parties ensued, and after multiple suits were filed, the parties settled a number of disputes in 1988 through a settlement agreement (1988 Agreement). Subsequently, to settle other disputes, the parties signed a letter agreement dated August 29, 1989 (1989 Agreement). Under one clause of the 1989 Agreement, Ferguson agreed he would not "reopen" the divorce case or the AID.

Disputes between the parties continued, and on November 8, 1994, Ferguson sued Smith. Under the AID, Smith was award-ed a valuable diamond ring. Ferguson initially asserted a claim for conversion of the ring, which was purchased during an attempted reconciliation in 1984.[1] Ferguson also alleged that, during the attempted reconciliation, Smith and a confederate broke into Ferguson's office, stole valuable confidential business and banking records, and maliciously destroyed property to cover up the theft. Accordingly, he asserts, through Smith's failure to disclose material facts and her deceit, she fraudulently induced both the purchase of the ring and his entering into a lop-sided property settlement; neither would have happened had he known of Smith's break-in and deception during the attempted reconciliation. He alleges also that Smith fraudulently concealed the facts so that he first learned in 1993 of Smith's involvement in the break-in and her deceit during the reconciliation period in 1984.

Ferguson later added causes of action alleging Smith breached particular contractual obligations under the AID, including assertions that (1) Smith blocked Ferguson's transfer of community-owned stock, (2) she failed to assume the obligation for the lien on the Southampton property awarded her in the divorce, and (3) she failed to file a proper income tax return for 1986, the last year of the marriage. Smith counterclaimed for, among other things,[2] payment of ad valorem property taxes on a piece of property on Second Avenue in Dallas, which Smith was awarded in the divorce. In the 1988 Agreement, Ferguson had agreed to pay back taxes on that property.

In March 1998, the trial court entered an interlocutory summary judgment against Ferguson, dismissing his claims

---

1. S.M. Ferguson, Inc. is the party-plaintiff that allegedly purchased the ring.

2. Smith's other claims were severed, leaving only her property-tax issue in this suit.

that are the subject of this appeal.[3] After a bench trial in July 1999, the trial court denied Smith recovery on her counterclaim for payment of taxes on the Second Avenue Property. Smith brought this appeal, and Ferguson cross-appealed.

While this appeal was pending, Ferguson filed a petition in bankruptcy, and this case was abated for nearly three years. Ferguson filed a motion to reinstate the case, which the Court granted.

### Smith's Counterclaim for Payment of Property Taxes

As part of the 1988 Agreement, Ferguson agreed to the following contractual obligations:

> Ferguson agrees to pay and obtain discharge for all ad valorem taxes due for all tax years prior to 1987 for that certain real property located on Second Avenue, Dallas, Texas … and Ferguson does further agree that he shall satisfy and obtain a discharge and release from all taxing authorities claiming past due taxes in association with such property for the tax years prior to 1987 on or before December 15, 1988.

The provision goes on to include an indemnity obligation:

> Ferguson does further hereby agree to indemnify and hold Smith harmless from any and all claims, demands, actions, and lawsuits, including all expenses, costs, and attorney's fees associated with the defense thereof, arising out of taxes due to any taxing authority related to the Second Avenue Property for tax years prior to 1987.

With respect to the indemnity provision, it was undisputed that, in 1995, various

taxing authorities brought an in rem action for payment of property taxes on the Second Avenue Property, dating from 1970 through 1978. Smith conceded at oral argument that her indemnity claim was premature, as the tax case was pending at the time. We agree with Smith, and thus we have no indemnity issue to decide in this appeal.

■ We turn to the contractual obligation to pay and obtain a discharge and release of tax obligations by December 15, 1988. A party asserting a breach of contract claim must sue no later than four years after the day the claim accrues. *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002).

Ferguson argues that the four-year statute of limitations ran on that obligation on December 15, 1992, over two years before Smith filed her counterclaim on January 11, 1995. Smith asserts that her claim was revived under section 16.069 of the civil practice and remedies code, which provides as follows:

> If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

TEX. CIV. PRAC. & REM.CODE ANN. § 16.069(a) (Vernon 1997). Smith contends that her claim for payment of taxes arose "out of the same transaction or occurrence" as Ferguson's claim, in that all claims arose out of the divorce and subsequent settlement agreements.

---

3. Ferguson's other claims, which concern oil and gas properties and attorney's fees, were subsequently resolved and are not at issue in this appeal. Also, Ferguson does not argue

on appeal that the trial court erred in granting summary judgment on the conversion claim.

For a counterclaim to arise out of the "same transaction or occurrence" as the original claim, there must be a "logical relationship" between the claims. The essential facts on which the counterclaim is based must be significantly and logically relevant to both claims. *Frazier v. Havens*, 102 S.W.3d 406, 411 n. 3 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *see Jack H. Brown & Co. v. Northwest Sign Co.*, 718 S.W.2d 397, 400 (Tex.App.-Dallas 1986, writ ref'd n.r.e.) (construing identical language used in civil-procedure rule 97(a) concerning compulsory counterclaims). One court has held that a claim concerning the interpretation of a particular provision in a deed was not logically related to a counterclaim attacking the validity or legality of the entire deed. *Freeman v. Cherokee Water Co.*, 11 S.W.3d 480, 483 (Tex.App.-Texarkana 2000, pet. denied).

Smith's cause of action is based on a provision in the 1988 Agreement concerning the payment of taxes on the Second Avenue Property. Ferguson did not allege any cause of action specifically related to that issue. Rather, he alleged that Smith breached specific, unrelated provisions of the AID and committed fraud. The facts essential to Smith's tax claim are not significantly or logically related to Ferguson's claims and thus did not "arise out of the same transaction or occurrence" under section 16.069. TEX. CIV. PRAC. & REM.CODE ANN. § 16.069(a). Accordingly, the trial court properly denied Smith recovery on her counterclaim for back taxes.

### Summary Judgment Disposing of Ferguson's Causes of Action

The trial court granted summary judgment, without stating reasons, on Ferguson's claims for "Breach/Fraud," including federal income tax issues, and "Indemnity—FDIC/Southampton." The trial court went on to conclude that these claims were barred and Ferguson was estopped by agreement from bringing them, citing specifically Ferguson's agreement in the 1989 Agreement not to reopen the divorce case or the AID.

We review a traditional summary judgment under well-established standards. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* To decide whether a disputed material fact issue exists, we take as true the evidence favorable to the non-movant. *Id.* We indulge every reasonable inference, and resolve any doubts, in favor of the non-movant. *Id.*

### Release and "Estoppel by Agreement"

Ferguson argues that the "release" language from the 1989 Agreement—that he would not "reopen" the divorce or AID—does not encompass his claims and neither did the 1989 settlement agreement bar litigation of his claims through collateral estoppel.

To release effectively a claim in Texas, the instrument must "mention" the claim to be released. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex.1991). Even if the claims exist when the release is executed, any claims not clearly within the subject matter of the release are not discharged. *Id.* *Brady*, nonetheless, does not require that the parties anticipate and identify each potential cause of action relating to the subject matter of the release. *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 698 (Tex.2000). In *Keck*, the language at issue released "all claims whatsoever," whether existing or arising in the future, that were attributable to legal services rendered during a specified time period. *Id.* at 697. The Court held that language

effectively released a legal malpractice claim despite the parties' specific reference to their intent to release claims for unpaid legal fees. *Id.* at 698.

Parties should be able to bargain for and execute a release that fully and finally resolves disputes between them. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex.1997). A release that clearly expresses the parties' intent to waive fraudulent-inducement claims can preclude such a claim. *Id.* at 180–81 (fraudulent-inducement claims released by language including "all causes of action of whatsoever nature" and releasing party "from any and all liability damages of any kind known or unknown, whether in contract or tort").

In their various agreements, the parties agreed to at least three separate provisions indicating their intent to release certain claims against each other. In the AID, signed in November 1986, the parties agreed to the following (emphasis added):

> 9.01. *Release of Claims.* The parties hereby expressly release and relinquish, each to the other, every claim *(including claims for intentional or willful torts),* demand, right and interest that he or she may have in or against the other, or in or against his or her estate, together with any income or earnings thereof, *arising from and during the marriage and, of and from, any other reason growing out of the marital relationship thereby created.*

After the divorce decree in January 1987, Ferguson and Smith were involved in numerous suits against each other. Smith asserted several suits against Ferguson to collect past due child support payments. The adult daughter, Sawnie, also sued Ferguson asserting he failed to meet certain obligations to her trust fund. In a separate matter, Ferguson had sued American Petrofina ("Fina") concerning an oil-and-gas matter. Smith intervened in that suit, asserting an interest on the children's behalf in certain properties.

Ferguson sued Smith as a third-party defendant in a suit concerning a loan by Bank of Dallas. In another matter, Union Bank and Trust had demanded payment on a substantial note of Ferguson's. According to Ferguson, he was forced to sell his family ranch in Forney—which required Smith's cooperation—to satisfy that debt.

These issues culminated in the 1988 Agreement between Smith and Ferguson, signed in September 1988. In it, among other things, the parties settled and agreed to dismiss at least four different actions against each other. Ferguson agreed to apply funds from the closing on the ranch to pay certain past-due child support obligations, and Smith received an agreed amount from the proceeds at closing.

Subsequently, Ferguson and Smith agreed in the 1989 Agreement to the following: Smith would dismiss her intervention in the Fina case. Ferguson would apply funds from that suit toward obligations to Sawnie's trust and would satisfy arrearages in child support and begin paying monthly child support in a set amount. In the last paragraph of the 1989 agreement, Ferguson agreed that "he will not reopen the divorce case of the parties or the Agreement Incident to Divorce made a part of such Decree."

█  The parties' initial agreement in the AID to release intentional tort claims encompasses the fraud claim. The crux of Ferguson's argument is that he should nonetheless be able to bring the fraud claim because Smith fraudulently concealed her deceitful behavior during the marriage, and he first discovered it only after agreeing to that release. The con-

text of Ferguson's later agreement points us to the opposite conclusion. Upon settling a multiplicity of suits in 1988 and 1989, Ferguson agreed not to "reopen" the AID or divorce. With his fraud claim, he now seeks recission of the allegedly "lopsided" AID and the decree incorporating the AID. As noted by the *Schlumberger* court, parties should be able to bargain for and execute a release that fully and finally resolves disputes between them. *Id.* at 179. We conclude that, coupled with the release language in the AID, Ferguson's agreement not to reopen the AID encompassed his fraud claim.

■ The AID explicitly stated breach-of-contract claims were not released.[4] Ferguson alleged a contract claim based on Smith's "failure to disclose" material facts concerning her allegedly deceitful behavior during the attempted reconciliation. We conclude that the language releasing intentional and willful torts subsumes this "contract" claim as well.

■ We look to the facts alleged in the petition, not the legal theory. *Utica Lloyd's of Tex. v. Sitech Eng'g Corp.*, 38 S.W.3d 260, 264 (Tex.App.-Texarkana 2001, no pet.). The underlying nature of the claim controls, and a plaintiff cannot by artful pleading avoid the adverse effects of an agreement. *Fridl v. Cook*, 908 S.W.2d 507, 514 (Tex.App.-El Paso 1995, writ dism'd w.o.j.) (plaintiff cannot, through artful pleading, avoid arbitration agreement).

Ferguson's "failure to disclose" claim is based on the same allegedly deceitful acts by Smith that Ferguson alleges are fraudulent. This purported contract claim merely restates a category of fraud. *See* *Schlumberger*, 959 S.W.2d at 181 (fraud by non-disclosure is simply a subcategory of fraud). Ferguson's claim alleging Smith's failure to disclose the material fact of her fraud is barred by Ferguson's agreement to release the fraud claim.

■ Ferguson also alleged that Smith failed to file proper income tax returns for 1986, contrary to her obligations under the AID. He alleges she failed to report income and consequently failed to pay her share of taxes on community-property income for 1986. He asserts that the Internal Revenue Service discovered these deficiencies in 1992, after limitations had run on any claim it had against Smith. As a result, Ferguson alleges, he was made to pay Smith's portion of the taxes due. As grounds for summary judgment, Smith asserted this claim was contradicted by contractual terms the parties had agreed to and was also barred by limitations and laches.

In the AID, the parties agreed to file separate tax returns for 1986, the final year of the marriage, and to pay the tax computed under the separate returns. They also agreed to cooperate in the preparation of the other's return and to encourage their tax preparers to file the returns promptly to avoid the need for any extensions. They agreed to forward immediately to the other a copy of any deficiency notice from the IRS.

The decree incorporating the AID was signed in January 1987. Some eighteen months later, Ferguson signed the 1988 Agreement. In addition to paying past-due child support from funds from the sale of the ranch, Ferguson agreed to pay certain taxes as well. He agreed to pay one-half of the property taxes from 1986 on the

---

4. The release provision in the AID excluded claims for breach of the AID:

   [N]either party is released or discharged from any obligation under this Agreement.... Further, this Release does not cover any claims either Party may have against the other resulting from tax returns filed by the Parties, or either of them, for taxable years commencing with 1984.

Southampton property and to pay taxes on the property on Second Avenue, as discussed above. Ferguson also agreed to satisfy, and indemnify Smith against, any federal tax liens against a specific oil-and-gas property. Following that provision, Ferguson agreed to pay any existing federal tax liens on property in which Smith had an interest, and he further indemnified Smith against any claims or actions related to "any and all taxes, whether income, ad valorem or of any other character . . . for tax years prior to 1987."[5]

Notably, Ferguson does not allege that Smith breached her obligations in the AID to file her 1986 tax return promptly. We note that Ferguson would have known of any such breach at the time he signed the 1988 Agreement, in September 1988. He nonetheless signed the 1988 Agreement, agreeing to pay a number of existing tax claims and indemnifying Smith against any and all federal tax claims for tax years prior to 1987. We conclude that, given this context, Ferguson's indemnity of Smith against federal tax deficiencies effectively estopped him from bringing this claim based on Smith's alleged breach of her obligation in the AID to file a proper income tax return for 1986.

### Limitations on Breach–of–Contract Claims

Smith asserts the affirmative defense that the statute of limitations barred Fer-

guson's contract claims. In her motion for summary judgment, she alleges that "all causes of action for breach of contract . . . are alleged to have occurred more than four years before November 8, 1994, when Plaintiffs' suit was filed and are barred by appropriate statutes of limitation and laches."[6]

An action for breach of contract is governed by a four-year statute of limitations. TEX. CIV. PRAC. & REM.CODE ANN. § 16.051 (Vernon 1997); *Stine,* 80 S.W.3d at 592 (general four-year statute of limitations applies to breach of contract). A party asserting a breach of contract claim must sue no later than four years after the day the claim accrues. *Stine,* 80 S.W.3d at 592. It is well-settled that a breach of contract claim accrues when the contract is breached. *Id.*

A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). The defendant must conclusively prove when the cause of action accrued. *Id.* If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of

---

5. The full provision reads as follows:

Ferguson does hereby agree to pay out of the proceeds of the Closing all amounts due to the United States Internal Revenue Service for past due federal income taxes which have resulted in placement of federal tax liens against any asset in which Smith has a present interest, and to further obtain releases for Smith from the Internal Revenue Service releasing federal tax liens that it now has in any such property in which Smith has an interest. Ferguson further agrees to *indemnify and hold Smith harmless from any and all demands, claims, ac-*

*tions and lawsuits,* including, expenses, costs and attorney's fees incurred in connection with the defense thereof or *related to any and all taxes, whether income, ad valorem or of any other character, plus any penalties and interest associated therewith, for tax years prior to 1987.*

6. Smith also asserted that limitations barred the fraud claim as well. Because we affirm summary judgment on the fraud claim on other grounds, we need not reach the question whether summary judgment was proper based on limitations.

the statute of limitations. *Id.* The burden does not shift to the nonmovant until the movant establishes its entitlement to a summary judgment as a matter of law. *Gibson v. Ellis,* 58 S.W.3d 818, 825 (Tex. App.-Dallas 2001, no pet.).

Ferguson's contract claims, for which he seeks actual damages, all concern the AID, signed in November 1986. Smith asserts in her motion for summary judgment that the causes of action for breach are based on events occurring before November 8, 1990, beyond the four-year limitation period. To establish her affirmative defense of limitations, Smith must, at a minimum, conclusively establish that each alleged breach occurred before November 8, 1990.

■ Ferguson asserts that Smith blocked the sale of the community stock in Union Bank, in breach of the AID's provision in which both agreed that "such stock shall be sold for cash, unless otherwise agreed to in writing, within a reasonable time." Ferguson argues that the value of the stock was a material asset and that "the Union Bank became insolvent with the resultant complete devaluation of the stock." He states in his affidavit that the Federal Deposit Insurance Corporation (FDIC) closed the bank about May 8, 1988. Thus, undisputed assertions support an inference that once the FDIC closed the bank in 1988, the stock was no longer marketable. Accordingly, Ferguson's cause of action for Smith's alleged breach—through blocking a timely stock sale—would have accrued during 1988, more than four years before Ferguson filed suit. This claim is barred by the statute of limitations, and summary judgment on that basis was proper.

■ Ferguson also alleged that, contrary to the AID, Smith breached her obligation to assume any encumbrances on the property in Southampton, New York. By affidavit, Smith testifies that Ferguson improperly encumbered the property with a lien in favor of Union Bank in October 1986. She includes a letter from Union Bank to attorney Michael McCauley, in which the bank accedes to his demand to release the lien on Smith's Southampton property. The letter, dated December 1987, shows a "cc" to Searcy M. Ferguson, Jr.

This evidence supports an inference that Ferguson knew of Smith's alleged breach—her failure to satisfy the amount of the lien—in 1987, which is outside the four-year limitation period. We turn to Ferguson's response. In his affidavit, Ferguson does not deny knowing in December 1987 that the bank had released the lien. Rather, he states in his affidavit, "After getting the bank president to call my notes on December 9, 1987, [Smith] demanded and got my [Southampton] collateral and/or liens she had expressly assumed to pay in the AID released with no credit on my bank debt." He makes further reference to the sale, in 1988, of his ranch property to satisfy the bank debt. Thus, Ferguson's own testimony supports the inference that he knew in December 1987 that the bank was demanding payment on the note, without benefit of Smith's obligation to assume the lien. We conclude that Smith conclusively established that this cause of action for breach accrued no later than 1988, over four years before Ferguson's filing of this suit in 1994. Thus, this claim is barred by limitations, and summary judgment was proper.

Accordingly, we **AFFIRM** the denial of recovery on Smith's counterclaim for the payment of taxes on the Second Avenue Property. We **AFFIRM** the trial court's summary judgment on Ferguson's fraud and breach-of-contract claims against Smith.