T.C. Memo. 2006-32


UNITED STATES TAX COURT


SEARCY M. FERGUSON, JR., AND ELIZABETH L. FERGUSON, Petitioners
v. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18229-04.              Filed February 27, 2006.


Searcy M. Ferguson, pro se.

Kathryn F. Patterson, for respondent.


MEMORANDUM OPINION


WELLS, Judge: Respondent determined a deficiency in petitioners' 2000 Federal income tax of $91,763, a section 6651(a)(1) addition to tax for failure to file of $9,176.30, and a section 6662 accuracy-related penalty of $18,352.60. Unless otherwise indicated, all section references are to the Internal

Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues to be decided are as follows:

(1) Whether petitioners may deduct a loss related to the alleged abandonment of real property by Searcy M. Ferguson's (petitioner) bankruptcy estate;

(2) whether petitioners may deduct a loss related to the alleged theft of a diamond ring by petitioner's former wife;

(3) whether petitioners may deduct a loss related to the alleged failure of petitioner's former wife to assume the obligation of liens that attached to real property awarded to her pursuant to an agreement incident to divorce;

(4) whether petitioners may deduct a loss related to the alleged failure of petitioner's former wife to pay taxes on real property awarded to her pursuant to an agreement incident to divorce;

(5) whether petitioners are liable for a section 6651(a)(1) addition to tax for failure to file timely; and

(6) whether petitioners are liable for a section 6662 accuracy-related penalty.

## Background

### General Background

Petitioners are husband and wife. At the time of the filing of the petition, they resided in Dallas, Texas.

From January of 1967 until their divorce in January of 1987, petitioner was married to Elizabeth Robertson Ferguson Smith (Ms. Smith). The final judgment and decree of divorce incorporated an agreement incident to divorce dated November 25, 1986 (the divorce agreement). To resolve various controversies subsequent to the divorce agreement, Ms. Smith and petitioner entered a settlement agreement in 1988 (the 1988 settlement agreement) and another settlement agreement in 1989 (the 1989 settlement agreement).

### The Vernon Property

During 1985, petitioner purchased three tracts of real property in or near Vernon, Texas (hereinafter collectively referred to as the Vernon property).[1] During 1994, petitioner secured a loan from Herring National Bank with a lien on the Vernon property.

During December of 1999, petitioner filed a bankruptcy petition under chapter 11 of the Bankruptcy Code with the U.S. Bankruptcy Court for the Northern District of Texas. The case

---

[1]Before 2001, petitioner conveyed a small portion of the Vernon property.

was converted from a chapter 11 case to a chapter 7 case, and petitioner subsequently transferred the Vernon property to the bankruptcy estate. On August 7, 2001, pursuant to a court order lifting the automatic stay, Herring National Bank foreclosed on the Vernon property. During May of 2003, the court approved an application filed by the bankruptcy trustee to abandon remaining property, books, and records of the bankruptcy estate on grounds that any remaining assets were of de minimis value. On April 7, 2004, the court discharged petitioner in bankruptcy.

The Diamond Ring

During 1984, petitioner's wholly owned S corporation, Searcy M. Ferguson, Inc. (the corporation), purchased a 16.25-carat diamond, which subsequently was made into a ring (the diamond ring), presumably at the expense of the corporation. At the time of the purchase, petitioner was married to Ms. Smith. The divorce agreement designated the diamond ring as the separate property of Ms. Smith.

As plaintiffs in a suit filed against Ms. Smith in Texas State court on November 8, 1994, petitioner and the corporation claimed, inter alia, that Ms. Smith was liable for conversion of the diamond ring. However, the trial court granted Ms. Smith's motion for summary judgment with respect to the conversion

claim.[2]  The court noted that petitioner had agreed pursuant to the 1989 settlement agreement not to reopen the divorce case or the divorce agreement.  Consequently, the court held petitioner and the corporation to be barred by judgment and estopped by agreement from asserting the conversion claim against Ms. Smith.[3]

The Southampton Property

During their marriage, Ms. Smith and petitioner owned real property located in Southampton, New York (the Southampton property).  The divorce agreement designated the Southampton property as the separate property of Ms. Smith.  With respect to encumbrances on real property subject to the divorce agreement, the divorce agreement contained the following indemnity provision (the indemnity provision):

> Assumption of Encumbrances.  Each party hereby assumes the encumbrances, ad valorem taxes and liens on all the property each will hold subsequent to the date of this Agreement, unless express provision is made herein to the contrary; and each party agrees to indemnify and hold harmless the other party and his or her property from any claim or liability that the other party will suffer or may be required to pay because of such encumbrances or liens.

---

[2]As discussed below, the trial court also granted summary judgment with respect to petitioner's claims that Ms. Smith breached the divorce agreement by failing to assume the liability for liens on certain real property and for failing to file a proper 1986 Federal income tax return.

[3]Although petitioner and the corporation appealed the judgment of the trial court, they did not claim on appeal that the trial court erred in granting summary judgment with respect to the conversion claim.

From October 23, 1986, to January 30, 1987, petitioner executed three deeds of trust, encumbering his community property interest in the Southampton property as security for loans from Union Bank & Trust of Dallas (Union Bank). On December 17, 1987, Union Bank released the three deeds of trust. In a letter dated December 18, 1987, Union Bank provided Ms. Smith's attorney with the following explanation for the release:

> Pursuant to your letter demanding our release of liens on * * *[the Southampton property], we have consulted with our attorney and have agreed to release our liens on the property. It does appear that the liens were granted in violation of an injunction at the time, and since * * *[petitioner] has deeded the property to * * *[Ms. Smith] as a result of their divorce, our unrecorded liens are invalid.

Petitioner ultimately repaid the underlying liability to Union Bank and added as a cause of action in his aforementioned suit against Ms. Smith a claim that Ms. Smith breached the indemnity provision of the divorce agreement by failing to assume the obligation for the liens on the Southampton property. As with the conversion claim, the trial court granted Ms. Smith's motion for summary judgment with respect to the aforementioned breach claim on grounds that petitioner had agreed pursuant to the 1989 settlement agreement not to reopen the divorce case or the divorce agreement. The court held petitioner to be barred by judgment and estopped by agreement from asserting the aforementioned breach claim against Ms. Smith. On appeal, the appellate court upheld the trial court's decision on grounds that

the claim was barred by the statute of limitations.  See <u>Smith v. Ferguson</u>, 160 S.W.3d 115, 124 (Tex. Ct. App. 2005).

<u>1986 Tax Liability</u>

With respect to the 1986 Federal income tax returns of Ms. Smith and petitioner, the divorce agreement provided as follows:

> <u>Manner of Preparing U.S. Individual Income Tax Return for 1986</u>.  Each party shall file a separate U.S. Individual Income Tax Return for the year 1986. Section 66 of the Internal Revenue Code is useable and applicable by spouse in 1986.  * * *[Ms. Smith and petitioner] each agree that they will file their separate returns for 1986 in accordance with said section and pay the tax computed under said separate returns.

The Internal Revenue Service examined petitioner's 1986 Federal income tax return.  In docket No. 5841-92, this Court entered a stipulated decision with respect to petitioner's 1986 Federal income tax liability.

Petitioner added, as a cause of action in his aforementioned State court suit against Ms. Smith, a claim that Ms. Smith breached the divorce agreement by failing to file a proper 1986 Federal income tax return and causing petitioner to pay Ms. Smith's Federal income tax liability for that year.  As with the claims discussed above, the trial court granted Ms. Smith's motion for summary judgment with respect to the aforementioned breach claim on grounds that petitioner had agreed pursuant to the 1989 settlement agreement not to reopen the divorce case or the divorce agreement.  The trial court held petitioner to be

barred by judgment and estopped by agreement from asserting the aforementioned breach claim against Ms. Smith.  On appeal, the appellate court upheld the trial court's decision.  See <u>id.</u>  The appellate court noted that petitioner indemnified Ms. Smith from Federal income tax liabilities before 1987 pursuant to the 1988 settlement agreement.[4]  <u>Id.</u> at 123.  Consequently, the appellate court held petitioner to be estopped from claiming that Ms. Smith breached the divorce agreement by failing to file a proper 1986 Federal income tax return.  <u>Id.</u>

---

[4]In <u>Smith v. Ferguson</u>, 160 S.W.3d 115, 123 n.5 (Tex. Ct. App. 2005), the court set forth the tax indemnity provision of the 1988 settlement agreement as follows:

"Ferguson does hereby agree to pay out of the proceeds of the Closing all amounts due to the United States Internal Revenue Service for past due federal income taxes which have resulted in placement of federal tax liens against any asset in which Smith has a present interest, and to further obtain releases for Smith from the Internal Revenue Service releasing federal tax liens that it now has in any such property in which Smith has an interest.  Ferguson further agrees to indemnify and hold Smith harmless from any and all demands, claims, actions and lawsuits, including, expenses, costs and attorney's fees incurred in connection with the defense thereof or related to any and all taxes, whether income, ad valorem or of any other character, plus any penalties and interest associated therewith, for tax years prior to 1987."

Petitioners' 2000 Federal Income Tax Return

Petitioners filed a 2000 Federal income tax return on December 12, 2001.[5]  Respondent timely mailed a statutory notice of deficiency to petitioners.  Petitioners timely filed a petition with this Court for a redetermination of the determined deficiency and filed an amended petition on October 7, 2004.  Petitioners subsequently submitted an amended 2000 Federal income tax return (amended tax return) in connection with respondent's Appeals Office review of the instant case.  With the exception of certain disputed deductions that are described in detail below, the parties stipulate that the amended tax return accurately reflects petitioners' tax liability for 2000.

## Discussion

The parties dispute whether petitioners are entitled to deductions with respect to (1) the alleged abandonment of the Vernon property by petitioner's bankruptcy estate, (2) the alleged theft of the diamond ring by Ms. Smith, (3) the alleged failure of Ms. Smith to assume the obligation for the liens on the Southampton property, and (4) the alleged failure of Ms. Smith to file a proper 1986 Federal income tax return.

Deductions are a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to

---

[5]Petitioners had filed a request to extend the filing due date to Oct. 15, 2001.

the claimed deductions.[6]  See Rule 142(a); <u>New Colonial Ice Co.</u> <u>v. Helvering</u>, 292 U.S. 435, 440 (1934); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  We now turn to our analysis of the disputed deductions.

<u>Alleged Abandonment of the Vernon Property</u>

Respondent contends that the Vernon property is treated for Federal income tax purposes as the property of petitioner's bankruptcy estate (the bankruptcy estate) upon the commencement of the bankruptcy case pursuant to section 1398 and, consequently, that petitioners did not realize a loss upon any disposition of the Vernon property by the bankruptcy estate in 2000.  Petitioners contend that the bankruptcy estate abandoned the Vernon property to Herring National Bank in 2000 and that petitioners acquired the right to recognize a related loss when petitioner "purchased all assets and claims of his bankruptcy estate" in a foreclosure sale on February 1, 2004.

The record does not support petitioners' contention that the bankruptcy estate abandoned the Vernon property in 2000.  Rather, the parties stipulated that Herring National Bank foreclosed its lien on the Vernon property on August 7, 2001, and petitioners have offered no evidence that the bankruptcy estate abandoned the Vernon property before the foreclosure.  Furthermore, the

---

[6]We note that petitioners have made no contentions with respect to sec. 7491(a).

bankruptcy trustee's final report indicates that the Vernon property was not abandoned by the bankruptcy estate. As noted above, the court approved an application filed by the bankruptcy trustee to abandon remaining property, books, and records of the bankruptcy estate in May of 2003. At that time, however, the bankruptcy estate did not include the Vernon property, which was the subject of the foreclosure by Herring National Bank in 2001. Petitioners have failed to demonstrate that the bankruptcy estate abandoned the Vernon property in 2000. Consequently, we hold that petitioners are not entitled to deduct a loss in 2000 with respect to the alleged abandonment.[7]

## Alleged Theft or Embezzlement of the Diamond Ring by Ms. Smith

Respondent contends that petitioners are not entitled to a theft loss deduction because Ms. Smith lawfully possessed the diamond ring pursuant to the divorce agreement. Petitioners contend that the corporation owned the diamond ring at all relevant times,[8] that the corporation was not a party to the

---

[7]Because we hold that petitioners failed to demonstrate that the bankruptcy estate abandoned the Vernon property in 2000, we need not decide whether such an abandonment would result in a loss for Federal income tax purposes. See Benton v. Commissioner, 122 T.C. 353, 368-369 (2004).

[8]Petitioners contend that the divorce agreement created a bailment with respect to the diamond ring, and Ms. Smith held a mere right to possession as the bailee.

divorce agreement,[9] and, consequently, that the divorce agreement's designation of the diamond ring as the separate property of Ms. Smith was ineffective.  Because Ms. Smith refused to return the diamond ring to the corporation upon demand, petitioners contend that Ms. Smith embezzled the diamond ring and that petitioners are entitled to a related section 165 theft loss deduction in 2000.

Section 165 generally provides for the deduction of certain casualty losses, including losses from theft.[10]  For purposes of

---

[9]Petitioners rely on an alleged prior State court decision. Although petitioners have provided this Court with no evidence as to the alleged State court decision, we understand petitioners' position to be that the court rejected a claim by the corporation that Ms. Smith breached the divorce agreement with respect to certain oil and gas properties on grounds that the corporation was not a party to the divorce agreement.  Petitioners contend that the State court decision that the corporation was not a party to the divorce agreement terminated Ms. Smith's right of possession with respect to the ring.

[10]SEC. 165.  LOSSES.

(a)  General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

*    *    *    *    *    *    *

(c)  Limitation on Losses of Individuals.--In the case of an individual, the deduction under subsection (a) shall be limited to--

*    *    *    *    *    *    *

(3) except as provided in subsection (h), losses of property not connected with a trade or business or a transaction entered into for profit, if such losses
(continued...)

section 165, the term "theft" includes but is not limited to larceny, embezzlement, and robbery.  Sec. 1.165-8(d), Income Tax Regs.  The law of the jurisdiction where the alleged loss is sustained governs the determination of whether a theft or embezzlement occurred.  Citron v. Commissioner, 97 T.C. 200, 207 (1991).  Tex. Penal Code Ann. sec. 31.03 (Vernon Supp. 2005), defines theft as follows:

> Section 31.03.  Theft.
>
> (a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.
>
> (b) Appropriation of property is unlawful if:
>
> (1) it is without the owner's effective consent;
> * * *.

Petitioners bear the burden of proving that a theft has occurred and that the requirements of section 165 have been met.  See Mendes v. Commissioner, 121 T.C. 308, 314-315 (2003).

Petitioners have failed to show that Ms. Smith unlawfully appropriated the diamond ring.  Although the corporation was not a party to the divorce agreement, petitioner, the sole shareholder of the corporation, was a party to the divorce agreement.  The facts and circumstances demonstrate that either petitioner consented to the designation of the diamond ring as

---

[10](...continued)
arise from fire, storm, shipwreck, or other casualty, or from theft.

the separate property of Ms. Smith on behalf of the corporation or the corporation ratified the designation.[11]  See Safety Intl., Inc. v. Dyer, 775 F.2d 660, 662 (5th Cir. 1985).  Consequently, we conclude that petitioners have failed to show that Ms. Smith did not receive the corporation's effective consent with respect to the diamond ring and have failed to prove that a theft of the ring occurred.  Accordingly, we hold that petitioners are not entitled to deduct a loss in 2000 with respect to the alleged theft of the diamond ring.

Alleged Failure of Ms. Smith to Assume Obligation for Liens on the Southampton Property

Respondent contends that petitioners are not entitled to deduct a loss related to the alleged failure of Ms. Smith to assume the obligation for liens on the Southampton property because no related liability existed between petitioner and Ms. Smith.  Petitioners contend that Ms. Smith's failure to assume the obligation for liens on the Southampton property constituted a theft and/or a bad debt and that petitioners are entitled to a deduction.[12]

---

[11]The parties stipulated that petitioner was the sole shareholder of the corporation.

[12]Petitioners do not specify whether the claimed deduction constitutes a sec. 165 theft loss deduction or a sec. 166 bad debt deduction.

With respect to the liens on the Southampton property, petitioners have presented no evidence that Ms. Smith unlawfully appropriated petitioner's property intending to deprive him of it. Consequently, we hold that petitioners are not entitled to a section 165 theft loss deduction with respect to the alleged failure of Ms. Smith to assume the obligation of liens on the Southampton property. See Rule 142(a).

Furthermore, petitioners have failed to demonstrate that they are entitled to a section 166 bad debt deduction with respect to the liens on the Southampton property. Section 166(a) generally provides that a taxpayer may deduct the amount of certain debts owed to the taxpayer which become worthless in the year of the deduction.[13] Section 166(d) provides that the loss

---

[13]SEC. 166. BAD DEBTS

(a) General Rule.--

(1) Wholly worthless debts.--There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

(2) Partially worthless debts.--When satisfied that a debt is recoverable only in part, the Secretary may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.

        *    *    *    *    *    *    *

(d) Nonbusiness Debts.--

(1) General rules.--In the case of a taxpayer other than a corporation--

(continued...)

of a noncorporate taxpayer resulting from the worthlessness of a nonbusiness debt is treated as a short-term capital loss. Sec. 166(d)(1).

Under certain circumstances, a taxpayer's payment in discharge of an agreement to act as guarantor, endorser, indemnitor or other secondary obligor (hereinafter generally referred to as guarantor) may be either (1) deducted as a worthless business debt pursuant to section 166(a) or (2) deducted as a worthless nonbusiness debt pursuant to section 166(d) (subject to treatment as a short-term capital loss).[14]

---

[13](...continued)
>     (A) subsection (a) shall not apply to any nonbusiness debt; and
>
>     (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 1 year.
>
> (2) Nonbusiness Debt Defined.--For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than--
>
>     (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or
>
>     (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business. * * *

[14]§ 1.166-9. Losses of guarantors, endorsers, and indemnitors incurred, on agreements made after December 31, 1975, in taxable years beginning after such date.--

(continued...)

However, such a payment may be treated as a worthless debt only
if (1) the taxpayer entered into the agreement to act as
guarantor either in the course of the taxpayer's trade or
business or in a transaction for profit; (2) the taxpayer had a
legally enforceable duty to make the payment; and (3) the
taxpayer entered into the agreement before the obligation became

---

[14](...continued)
     (a) Payment treated as worthless business debt.  This
paragraph applies to taxpayers who, after December 31, 1975,
enter into an agreement in the course of their trade or
business to act as (or in a manner essentially equivalent
to) a guarantor, endorser, or indemnitor of (or other
secondary obligor upon) a debt obligation.  Subject to the
provisions of subparagraphs (c), (d), and (e) of this
section, a payment of principal or interest made during a
taxable year beginning after December 31, 1975, by the
taxpayer in discharge of part or all of the taxpayer's
obligation as a guarantor, endorser, or indemnitor is
treated as a business debt becoming worthless in the taxable
year in which the payment is made or in the taxable year
described in paragraph (e)(2) of this section.  Neither
section 163 (relating to interest) nor section 165 (relating
to losses) shall apply with respect to such a payment.

     (b) Payment treated as worthless nonbusiness debt.
This paragraph applies to taxpayers (other than
corporations) who, after December 31, 1975, enter into a
transaction for profit, but not in the course of their trade
or business, to act as (or in a manner essentially
equivalent to) a guarantor, endorser, or indemnitor of (or
other secondary obligor upon) a debt obligation.  Subject to
the provisions of paragraphs (c), (d), and (e) of this
section, a payment of principal or interest made during a
taxable year beginning after December  31, 1975, by the
taxpayer in discharge of part or all of the taxpayer's
obligation as a guarantor, endorser, or indemnitor is
treated as a worthless nonbusiness debt in the taxable year
in which the payment is made or in the taxable year
described in paragraph (e)(2) of this section.  Neither
section 163 nor section 165 shall apply with respect to such
a payment.  [Sec. 1.166-9, Income Tax Regs.]

worthless.  Sec. 1.166-9(d), Income Tax Regs.  Furthermore, such a payment may be treated as a worthless debt only if the taxpayer demonstrates that reasonable consideration was received in return for the assumption of the secondary liability.

We understand petitioners' contention to be that petitioner's payment of the underlying liability to Union Bank in discharge of petitioner's obligation as a guarantor may be treated as a worthless debt and that petitioners may deduct the payment pursuant to section 166(a) or (d).  However, petitioners have made no contentions and offered no evidence that petitioner entered into an agreement to act as a guarantor in exchange for reasonable consideration, that petitioner entered into such an agreement in the course of his trade or business or a transaction for profit, that petitioner had an enforceable legal duty to make the payment, or that petitioner entered into such an agreement before the obligation became worthless.  Accordingly, we conclude that petitioners have failed to demonstrate that petitioner's payment of the underlying liability to Union Bank constitutes a worthless debt for purposes of section 166.  Consequently, we hold that petitioners are not entitled to deduct the payments as either a worthless business debt pursuant to section 166(a) or as a worthless nonbusiness debt pursuant to section 166(d).

Alleged Failure of Ms. Smith To File a Proper 1986 Federal Income Tax Return

Respondent contends that petitioners are not entitled to deduct a loss with respect to the alleged failure of Ms. Smith to file a proper 1986 Federal income tax return because no related liability existed between Ms. Smith and petitioner. Petitioners contend that Ms. Smith and petitioner agreed pursuant to the divorce agreement to file separate 1986 Federal income tax returns, that Ms. Smith failed to file a proper 1986 Federal income tax return, that petitioner's return was audited and he was required to pay Ms. Smith's 1986 tax liability of $118,000,[15] that Ms. Smith's failure to file a proper 1986 Federal income tax return constitutes "theft by swindling and false pretenses", and that petitioners are entitled to deduct the $118,000 as a bad debt loss and/or as a theft loss.[16]

Petitioners have failed to demonstrate that they are entitled to a section 165 theft loss deduction related to the alleged failure of Ms. Smith to file a proper 1986 Federal income

---

[15]Petitioners contend that their accountant determined that Ms. Smith's alleged failure to file a proper 1986 Federal income tax return resulted in expenses to petitioner of $118,000 "after allowing her all credits for community splitting."

[16]Petitioners do not specify whether the claimed deduction constitutes a sec. 165 theft loss deduction or a sec. 166 bad debt deduction.

tax return. Petitioners have presented no evidence that Ms. Smith unlawfully appropriated petitioner's property intending to deprive him of it. On the contrary, the record demonstrates that petitioner agreed pursuant to the 1988 settlement agreement to indemnify Ms. Smith with respect to any and all taxes for tax years prior to 1987. As discussed above, in Smith v. Ferguson, 160 S.W.3d at 123, the court held that petitioner's indemnifying Ms. Smith against Federal income tax liabilities effectively estopped petitioner from later claiming that Ms. Smith breached the divorce agreement by failing to file a proper 1986 Federal income tax return. We conclude that petitioners have failed to show that the alleged failure of Ms. Smith to file a proper 1986 Federal income tax return constitutes a theft. Consequently, we hold that petitioners are not entitled to a section 165 theft loss deduction for the failure of Ms. Smith to file a proper 1986 Federal income tax return.

Furthermore, petitioners have failed to demonstrate that they are entitled to a section 166 bad debt deduction related to the alleged failure of Ms. Smith to file a proper 1986 Federal income tax return. We understand petitioners' contention to be that petitioner's payment of Ms. Smith's 1986 tax liability in discharge of petitioner's obligation as a guarantor may be treated as a worthless debt and that petitioners may deduct the payment pursuant to either section 166(a) or (d). The record

demonstrates that petitioner indemnified Ms. Smith against Federal income tax liabilities for the 1986 tax year pursuant to the 1988 settlement agreement. However, petitioners have made no contentions and offered no evidence that petitioner entered into the aforementioned agreement in the course of his trade or business or a transaction for profit. Consequently, we conclude that petitioners failed to demonstrate that petitioner's payment of Ms. Smith's 1986 tax liability constitutes a worthless debt for purposes of section 166. See sec. 1.166-9(d)(1), Income Tax Regs. Accordingly, we hold that petitioners are not entitled to deduct the payment as either a worthless business debt pursuant to section 166(a) or as a worthless nonbusiness debt pursuant to section 166(d).

## Addition to Tax for Failure To File

Respondent contends that petitioners did not file their 2000 Federal income tax return within the time prescribed by law and, consequently, that petitioners are liable for an addition to tax pursuant to section 6651. Petitioners contend that their bank and tax records were the subject of a subpoena related to petitioner's bankruptcy case, that the records were not returned to them until November of 2001 despite petitioner's repeated demands, that the records were out of order upon their return, and, consequently, that petitioners were unable to timely file their 2000 Federal income tax return.

Section 6651(a)(1) provides for an addition to tax of 5 percent of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file, not to exceed 25 percent. The addition to tax for failure to file a return timely will be imposed if the return is not filed timely unless the taxpayer shows that the delay was due to reasonable cause and not willful neglect. Sec. 6651(a)(1). The Commissioner bears the burden of production with respect to the addition to tax. Sec. 7491(c). The parties stipulated that petitioners filed their 2000 Federal income tax return on December 12, 2001, after receiving a 6-month extension. Consequently, we must determine whether petitioners have shown that the delay was due to reasonable cause and not willful neglect.

A delay is due to reasonable cause if the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. "Willful neglect" is defined as a "conscious, intentional failure or reckless indifference." United States v. Boyle, 469 U.S. 241, 245 (1985). In the instant case, the record demonstrates that petitioners requested and were granted a 6-month extension to file the 2000 Federal income tax return. Petitioners contend and respondent does not dispute that petitioners lacked access to essential financial records as of

October 15, 2001. However, petitioners did not make any attempt to file a return reporting their income and expenses as accurately as they could using the best information available. See <u>Belk v. Commissioner</u>, 93 T.C. 434, 447 (1989). On the basis of the instant record, we conclude that petitioners have not shown that the delay was due to reasonable cause. Consequently, petitioners are liable for a section 6651 addition to tax for failure to file a timely return.

Petitioners further contend that the Bankruptcy Code precludes the assessment of a section 6651 addition to tax for failure to file.[17] However, in exercising jurisdiction to redetermine a deficiency, this Court lacks jurisdiction to decide whether the deficiency and the related addition to tax were discharged in a prior bankruptcy proceeding. <u>Neilson v. Commissioner</u>, 94 T.C. 1, 9 (1990); <u>Graham v. Commissioner</u>, 75 T.C. 389, 396 (1980); cf. <u>Washington v. Commissioner</u>, 120 T.C. 114, 120 (2003) (Tax Court's jurisdiction to decide whether discharge occurred extends to section 6330 proceedings but not to

---

[17]Petitioners' reply brief set forth the aforementioned contention as follows:

> Further, petitioners, the injured taxpayers, assert that any late penalties for a faultless 2000 tax year late filing are statutorily and explicitly barred by applicable federal bankruptcy statutes. The IRS baroque twist sidesteps bankruptcy laws. No further discussion of the penalty issue seems appropriate or necessary.

deficiency suits).  Consequently, we do not decide whether the discharge in bankruptcy released petitioners from the liability for the section 6651 addition to tax.[18]

Accuracy-Related Penalty

Respondent contends that petitioners' 2000 Federal income tax return reflected a substantial understatement, that there was no reasonable cause for the understatement, and, consequently, that petitioners are liable for an accuracy-related penalty pursuant to section 6662(a).

Section 6662(a) imposes a 20-percent accuracy-related penalty with respect to the portion of any underpayment of tax attributable to a substantial understatement of income tax.  An "understatement" is the excess of the amount of tax required to be shown on the return over the amount of tax that is actually shown on the return.  Sec. 6662(d)(2)(A).  A "substantial

_____

[18]Petitioners' amended petition contended, inter alia, that the bankruptcy estate paid the entire tax liability determined by the bankruptcy court, that the bankruptcy court discharged petitioner on Apr. 7, 2004, and, consequently, that respondent is precluded from subsequently asserting any deficiency against petitioners.  Petitioners made no further contention at trial or on brief that the bankruptcy court discharged the underlying 2000 tax liability at issue, and the parties have presented no evidence with respect to such a discharge.  As discussed above, this Court lacks jurisdiction to decide whether a deficiency was discharged in a prior bankruptcy proceeding.  Neilson v. Commissioner, 94 T.C. 1, 9 (1990); Graham v. Commissioner, 75 T.C. 389, 396 (1980).  Consequently, we do not decide whether the bankruptcy court discharged the underlying deficiency, addition to tax, or accuracy-related penalty for petitioners' 2000 tax year.

understatement" of income tax exists if the amount of the understatement for the taxable year exceeds the greater of (1) 10 percent of the tax required to be shown on the return or (2) $5,000. Sec. 6662(d)(1)(A). However, the amount of an understatement is reduced by any portion for which (1) there was substantial authority for the taxpayer's treatment, (2) or the relevant facts affecting the item's tax treatment were adequately disclosed in the return or in a statement attached to the return and there is a reasonable basis for the tax treatment. In addition, no penalty under section 6662 may be imposed with respect to any portion of an underpayment if it is shown that there was a reasonable cause for the portion and that the taxpayer acted in good faith with respect to the portion. Sec. 6664(c)(1).

Pursuant to section 7491(c), respondent bears the burden of production with respect to the determined accuracy-related penalty. Consequently, respondent must produce sufficient evidence to demonstrate that the accuracy-related penalty is appropriate. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once respondent meets his burden of production, petitioner must produce sufficient evidence to persuade the Court that respondent's determination is incorrect. Id. at 447.

The evidence demonstrates that the Federal income tax liability for petitioners' 2000 tax year is $91,763 but that

petitioners reported zero income tax on their 2000 Federal income tax return.  Because $91,763 exceeds $5,000 and 10 percent of the amount required to have been shown on petitioners' return, we conclude that respondent has produced sufficient evidence to demonstrate that the underpayment is attributable to a substantial understatement and that an accuracy-related penalty is appropriate.  See sec. 6662(d)(1)(A).

In the petition, petitioners contended that no penalty should be imposed because (1) "there was absolute full disclosure", (2) petitioners acted in good faith, and (3) any understatement was due to reasonable cause.  However, petitioners made no contentions and produced no evidence opposing the section 6662(a) accuracy-related penalty at trial or on brief.  See Rules 142(a), 149(b); Burris v. Commissioner, T.C. Memo. 2001-49.  Consequently, petitioners have failed to persuade the Court that respondent's determination with respect to the accuracy-related penalty was incorrect.  Accordingly, we hold that petitioners are liable for a section 6662(a) accuracy-related penalty for substantial understatement of tax.

We have considered all of the contentions that the parties have raised.  To the extent not addressed herein, those contentions are without merit or unnecessary to reach.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.